**In re CONTINENTAL HOLDINGS, INC., Debtor.**

**Bankruptcy No. 92–33834.**

United States Bankruptcy Court,
N.D. Ohio,
Western Division.

April 26, 1994.

Opinion Denying Motions to Alter
or Amend or for Relief May 10, 1994.

James Perlman, Toledo, OH, for Continental Holdings, Inc.

David C. Purdue, John C. Purdue, Toledo, OH, for R. Kevin McIntyre, James McIntyre, William Lindemeyer & Co. and Purdue Law Offices.

Dean Wyman, Lenore Kleinman, Office of the U.S. Trustee, Cleveland, OH.

Louis Yopollo, Toledo, OH, for Ralph Cordes.

## OPINION AND ORDER DENYING DEBTOR'S MOTION TO DISMISS CASE AND GRANTING UNITED STATES TRUSTEE'S MOTION TO CONVERT CASE

WALTER J. KRASNIEWSKI,
Bankruptcy Judge.

This matter is before the Court on Continental Holdings, Inc.'s (the "DIP") motion to dismiss its chapter 11 case to which objections have been filed by the United States Trustee ("UST"), and Fowler Office Products, Inc. The UST has moved to convert the DIP's chapter 11 case to a case under chapter 7 pursuant to 11 U.S.C. § 1112(b). The UST has also moved for the appointment of a trustee or an examiner pursuant to § 1104. Prior to the hearing on the parties' respective motions, creditor Ralph Cordes ("Cordes") had moved that the case be converted pursuant to § 1112(b) or that a trustee be appointed pursuant to § 1104. Cordes' motions were orally withdrawn at the hearing on the parties' respective motions. Upon consideration of the evidence adduced on the parties' respective motions, the Court finds that the DIP's motion to dismiss its chapter 11 case is not well taken and should be denied. The Court further finds that the UST's motion to convert the DIP's case to a case under chapter 7 is well taken and should be granted. Lastly, the UST's motion to appoint a trustee or an examiner should be dismissed as moot.

### FACTS

**Proceedings in State Court and in This Court on Cordes' Contract and Fraud Claims and the DIP's Counterclaim**

The DIP states in its Second Amended Disclosure Statement that its "Decision to Proceed with Reorganization" was to forestall execution upon a judgment obtained by Cordes against the DIP's assets.

On April 26, 1991, Cordes filed a complaint in the Common Pleas Court of Wood County ("State Trial Court") seeking judgment against the DIP and its president and sole shareholder Charles E. Friesner, Jr. ("CEF") on a promissory note dated December 30, 1990 (the "Contract Action"). Cordes

later amended this complaint to include a cause of action for fraud against the DIP and CEF (the "Fraud Action"). The DIP filed a counterclaim against Cordes for Cordes' alleged failure to redeliver certain tooling to the DIP (the "Counterclaim").

The State Trial Court granted Cordes summary judgment jointly and severally against the DIP and CEF in the Contract Action on March 4, 1992. The liability of the DIP and CEF in the Contract Action is presently on appeal to the Court of Appeals of Wood County, Ohio Sixth Appellate District ("State Appellate Court"). Cordes obtained a judgment lien against the DIP on July 28, 1992.

Upon the completion of discovery in the State Trial Court, the Fraud Action and the Counterclaim were set for trial in December of 1992. However, trial on these causes of action was stayed upon the DIP's filing of a petition under chapter 11 of title 11 on October 29, 1992 (the "Petition Date").

This Court granted Cordes relief from the automatic stay so that Cordes could pursue the Fraud Action against the DIP and CEF on March 10, 1993.

On March 22, 1993, the DIP removed the Contract Action, the Fraud Action, and the Counterclaim to this Court. The DIP further brought an action in this Court against Cordes which, although nominally characterized by the DIP as a "turnover" action, represented an action for breach of contract. On June 8, 1993, this Court remanded the Contract Action, the Fraud Action and the Counterclaim to the state court and abstained from hearing the DIP's "turnover" action against Cordes. 158 B.R. 442.

Cordes has not taken any action to collect on his judgment against the DIP in the Contract Action since the Petition Date. However, in order to enforce this judgment against CEF, Cordes brought an action in the State Trial Court to foreclose upon certain of the real property of CEF and his wife, Kathleen Friesner ("KF"), on September 10, 1993. The DIP has brought an adversary proceeding within this bankruptcy case to enjoin Cordes from executing against CEF on the judgment obtained in the Contract Action. *See* Adversary Proceeding 93–3306.

In order to stay execution of the judgment in the Contract Action against CEF and the DIP, CEF posted a property bond (the "Bond") with the State Appellate Court secured by certain real estate owned by the DIP (the "Real Property") on February 9, 1994. CEF did not obtain this Court's approval or provide notice to the DIP's creditors before posting the Bond.

In light of the fact that the DIP has appealed the State Trial Court's judgment on the Contract Action to the State Appellate Court, the State Trial Court has vacated all dates previously set for proceedings upon the Fraud Action and the Counterclaim.

### Proposed Plan Funding

The DIP will assertedly fund its plan of reorganization from an account receivable from Bilund Corporation (the "Note Receivable") and by "some funds" which "may be received by way of a sale of all or part of [Sentex Products, Inc. ("Sentex") ]", a corporation wholly owned by KF. This executory contract entered into between the DIP and KF was not disclosed on the DIP's bankruptcy schedules.

The Note Receivable arose from the DIP's sale of the " 'Lincoln Products' mudflap business" to Bilund Corporation on November 13, 1990 for $1,910,000.00. *See* UST's Exhibit H, Lincoln Products Sale Agreement, p. 1, para. 2 (the "Lincoln Agreement").

Despite the fact that the monthly payments from Bilund to the DIP represent payments on the Note Receivable, the DIP has continually characterized such payments as "operating income" in its disclosure statements and in its operating reports. *See* Second Amended Disclosure Statement at p. 10, para. 3.

According to the amended bankruptcy schedules filed by the DIP, the amount of the Note Receivable totaled $1,096,000.00 on the Petition Date. Under the Note Receivable which originally totaled $1,660,000.00, the DIP receives payments "according to an amortization of ten (10) years at the rate of ten (10%) percent with equal payments on the first (1st) day of each month, [which

commenced on] November 1st, 1990". *See* Lincoln Agreement, p. 2, para. 2.(d). These payments currently approximate $26,000.00 per month. The parties have stipulated that the value of the Note Receivable presently approximates $800,000.00. The Lincoln Agreement further provides that the purchasers may prepay the Note Receivable without penalty four and one-half years after the date of the closing of the sale of the Lincoln products line, which closing took place on July 27, 1990. *See* Lincoln Agreement, p. 2, para. 2(e) (governing prepayment); Lincoln Agreement, p. 6, para. 9 ("[t]he closing shall be deemed to have taken place on July 27, 1990").

According to the DIP's Second Amended Disclosure Statement, "the [DIP] is sponsoring a product/process development within ... Sentex Products, Inc. This development includes a material which is an ecologically friendly material designed for use in applications where an environmentally safe, high strength product is required for use in a hostile atmosphere." *See* Second Amended Disclosure Statement at p. 4, para. 3. The Second Amended Disclosure Statement further states that the sale of this "product/process" was "anticipated" prior to the end of 1993. *See* Disclosure Statement at p. 4, para. 4. In a "Business And Product Development Agreement" (the "Sentex Agreement") entered into between the DIP and Sentex on June 12, 1991, the DIP agreed to "totally finance" Sentex operations. Sentex, in turn, agreed that "upon the eventual sale of the corporate shares of Sentex, or the Sentex business" it would repay the DIP the money which was "borrowed" from the DIP. Sentex further agreed to pay the DIP "ninety percent" of the "profit of the sale price" upon sale of Sentex.

The consideration provided by Sentex to the DIP at the time which this agreement was executed is not readily apparent from the face of the Sentex Agreement.

### Proceedings Upon the DIP's Plan of Reorganization

The DIP filed its disclosure statement and plan on August 10, 1993.

Objections were filed to the DIP's initial plan and disclosure statement by Cordes and the UST.

At a hearing on the approval of the disclosure statement on October 6, 1993, the parties stipulated that the DIP would be granted until October 22, 1993 to file an amended plan and disclosure statement.

On October 22, 1993, the DIP filed an amended plan and disclosure statement to which objections were again filed by Cordes and the UST.

The DIP filed a "Response to Objections To Amended Disclosure Statement and Motion to Dispense with Further Hearing" on November 5, 1993. The DIP's response stated that the "Plan of Reorganization [was] a 'no-brainer'" and further that "[t]he nitpicking objections of [Cordes] [were] interposed merely for the purpose of delay and harrassment". The Court found that the DIP's response failed to minimally address the objections of Cordes and the UST and entered an order on November 5, 1993 that the DIP show cause why the objections should not be sustained upon the DIP's failure to file an amended plan and disclosure statement within 10 days.

On November 22, 1993, the DIP having failed to comply with the Court's show cause order of November 5th, the Court sustained the objections to the amended disclosure statement and granted the DIP until December 2, 1993 to file a second amended disclosure statement.

The DIP filed a Second Amended Disclosure Statement on December 2, 1993. The Second Amended Disclosure Statement was approved on December 22, 1993, no objections having been filed.

On January 10, 1994, Cordes filed a motion to vacate this Court's order approving the DIP's Second Amended Disclosure Statement.

On February 11, 1994, the DIP moved to dismiss its chapter 11 case pursuant to § 1112(b) because "the Court of Appeals for the Sixth Appellate District [had] granted a stay of execution and approved a property bond in the litigation involving the largest creditor, Ralph Cordes". The DIP's motion

to dismiss asserts that "[w]ith a stay in place pending the matters on appeal and with the upcoming trial, the controversy between Debtor and Ralph Cordes will soon be concluded" and that, thus, "further proceedings appear unnecessary in the Bankruptcy Court".

### The Proposed Arbitration Agreement Between the DIP and Cordes

On the day of the hearing on the parties' respective motions (the "Hearing"), The DIP and Cordes filed an arbitration agreement with the Court which stated that the DIP and Cordes would submit the Contract Action to binding arbitration (the "Arbitration Agreement"). In the Arbitration Agreement, the DIP and CEF agree to dismiss their appeal of the Contract Action in the State Appellate Court. Further, the Arbitration Agreement provides that the Note Receivable would not be encumbered by the DIP without written notification to Cordes. The Arbitration Agreement further provides that Cordes' judgment lien will remain in place. In return for the submission of the Contract Claim to binding arbitration, Cordes agreed to "withdraw[ ] ... any and all motions" filed by Cordes in this bankruptcy case. Cordes further agreed to dismiss the Fraud Action. Additionally, the Arbitration Agreement provides that Cordes shall dismiss a foreclosure action against CEF which arose from Cordes' judgment on the Contract Action.

### Testimony of Todd Friesner

At the Hearing, Todd Friesner ("Todd") testified that his mother KF was unable to attend because she was either at a doctor's office or at the hospital. Todd testified that KF has terminal pancreatic cancer and is on a "day to day" basis.

Todd testified that the DIP is in the business of research and development which includes all aspects of developing new products and processes. Todd further testified that the DIP had a number of products or processes in various stages of development and that the DIP had one product which was "quite close" to completion. Nonetheless, Todd's testimony did not indicate that the DIP had obtained any commitments from customers to purchase any of the products or processes under development.

In response to questions concerning his father CEF's business experience, Todd testified that CEF has been in the manufacturing business for 30 years. Todd further testified that his father had a working understanding of the accounting involved in the DIP's business.

Todd testified that the DIP has two employees, exclusive of CEF. Todd further testified that Sentex has one employee.

### DISCUSSION

### DENIAL OF CONTINUANCE BASED UPON CEF'S FAILURE TO APPEAR AT THE HEARING

■ The DIP moved for a continuance at the close of the evidence on the DIP's motion to dismiss based upon the fact that CEF was purportedly unavailable to attend the Hearing.

The only information presented at the Hearing in support of the DIP's motion for a continuance was Todd's testimony that KF was either at a doctor's office or at the hospital and that CEF was "by her side".

The parties agree that CEF had actual notice of the Hearing.

As the Court ruled at the Hearing, CEF's failure to appear because of KF's illness did not represent grounds for a continuance.

First, the DIP's oral motion for a continuance, made at the close of the evidence on the DIP's motion to dismiss, was untimely. *See United States v. Albert,* 595 F.2d 283, 286 (5th Cir.1979) (denial of defendant's motion for continuance in criminal conspiracy trial proper where such motion was not filed until 6 days prior to trial in light of the fact that defendant was aware of witness' illness approximately 2 months prior to trial), *cert. denied* 444 U.S. 963, 100 S.Ct. 448, 62 L.Ed.2d 375 (1979); *Hunter v. Society Bank & Trust (In re Parker Steel Co.),* 149 B.R. 856 (Bankr.N.D.Ohio 1992) (denying defendant's motion to continue adversary proceeding filed one week prior to trial in adversary which had been pending for two years).

The DIP did not file a motion with the Court prior to the Hearing to permit CEF to testify out of order. Nor did the DIP file a motion with the Court prior to the Hearing to facilitate a suitable time and place for CEF's testimony.

In the absence of a motion filed with the Court prior to the Hearing which would have facilitated CEF's testimony, the Court found that denial of the DIP's motion to continue was warranted in light of the fact that the DIP did not provide the Court with any information indicating that CEF was required to be present with KF on the morning of the Hearing. Nor did the proposed substance of CEF's testimony which was proferred by the DIP's counsel persuade the Court that the grant of a continuance was warranted.

### ADMISSABILITY OF ALLEGED "CONSENT[S] TO DISMISSAL"

■ At the Hearing, the DIP attempted to introduce certain purported "consent[s] to dismissal" (the "Alleged Consents") which the DIP allegedly obtained from its creditors. The Alleged Consents were clearly introduced in an attempt to prove the truth of the extrajudicial statements contained in the Alleged Consents. Therefore, the Court sustained the UST's objection to the introduction of the Alleged Consents. *See* Fed. R.Evid. 802 ("[h]earsay is not admissible except as provided by these rules or by other rules prescribed by the Supreme Court pursuant to statutory authority or by Act of Congress").

■ Moreover, resort to judicial notice does not render the Alleged Consents admissible as proof of the truth of the assertions contained in the Alleged Consents. Indeed, "[t]hat a fact sought to be noticed is found in the court's records is not talismanic; the fact still must be of the type described in Fed. R.Evid. 201". *In re Blumer*, 95 B.R. 143, 146 (9th Cir. BAP 1988) (citations omitted). The truth of the assertions contained within the Alleged Consents is not "(1) generally known within the territorial jurisdiction of [this] trial court or (2) capable of accurate and ready determination by resort to sources

whose accuracy cannot reasonably be questioned". Fed.R.Evid. 201(b). Therefore, judicial notice of the truth of the assertions contained in the Alleged Consents is not appropriate. *See Blumer*, 95 B.R. at 147 (judicial notice of facts contained within deposition in court file were not subject to judicial notice); *In re MCorp Financial, Inc.*, 137 B.R. 219, 229 (Bankr.S.D.Tex.1992) (taking judicial notice of disclosure statement in bankruptcy case file but not of the truth of the assertions contained therein), *app'l dism'd*, 139 B.R. 820 (S.D.Tex.1992); *Singer Sewing Co. v. Harmon (In re Harmon)*, 1992 WL 13624 at *4, Adv. No. 91–0147 (Bankr. W.D.Tenn.1992) (court cannot take judicial notice of the truth of the contents of a bankruptcy petition) (citation omitted); *see also In re Aughenbaugh*, 125 F.2d 887, 890 (3rd Cir.1942) (judicial notice of the truth of documents in court file inappropriate) (footnote omitted).

Furthermore, the Alleged Consents do not disclose the circumstances under which the Alleged Consents were obtained. The Alleged Consents do not indicate whether any representations were made to the DIP's creditors in obtaining the Alleged Consents. Additionally, the Alleged Consents do not disclose whether the DIP's creditors were informed of material financial transactions by the DIP subsequent to the DIP's second amended disclosure statement, including the fact that the DIP had conveyed the Bond without the approval of creditors or this Court.

### THE DIP'S MOTION TO DISMISS

**Applicable Statute**

Section 1112(b) provides, in pertinent part, that:

> on request of a party in interest or the United States trustee, and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title or may dismiss a case under this chapter, whichever is in the best interest of creditors and the estate for cause, including—

(1) continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation;

(2) inability to effectuate a plan;

(3) unreasonable delay by the debtor that is prejudicial to creditors[.]

## Burden of Proof

■ The DIP bears the burden of proof on its motion by the preponderance of the evidence. *In re A–K Enterprises, Inc.,* 111 B.R. 149 (Bankr.N.D.Ohio 1990); *c.f. Grogan v. Garner,* 498 U.S. 279, 286, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991) (stating that "[b]ecause the preponderance-of-the-evidence standard results in a roughly equal allocation of the risk of error between litigants, [the Supreme Court] presume[s] that this standard is applicable in civil actions between private litigants unless 'particularly important individual interests or rights are at stake.'") (quoting *Herman & MacLean v. Huddleston,* 459 U.S. 375, 389–90, 103 S.Ct. 683, 691–92, 74 L.Ed.2d 548 (1983)) (other citations omitted).

■ The Court cannot agree with the DIP that the fact that the "Court of Appeals for the Sixth Appellate District has granted a stay of execution and approved a property bond in the litigation involving the largest creditor, Ralph Cordes" represents "cause" for dismissal. *See* DIP's Motion to Dismiss, p. 1. The mere fact that the DIP will be permitted a stay of execution on Cordes' judgment in the Contract Action, similar to that which it has enjoyed since the Petition Date pursuant to § 362, does not represent "cause" for dismissal.

■ Nor does the fact that the Arbitration Agreement may adequately protect the interests of both the DIP and Cordes represent "cause" for dismissal.

■ Further, the fact that the DIP allegedly has sufficient assets to repay creditors does not represent "cause" for dismissal.

■ Moreover, even if the Court were to agree with the DIP that the DIP has satisfied the "cause" requirement of § 1112(b), the Court cannot agree with the DIP that

dismissal of its chapter 11 case would be in the best interest of creditors and the estate.

■ The express language of § 1112(b) indicates that a debtor's motion to dismiss should not "reflexively ... be granted whenever cause exists". *In re Mechanical Maintenance, Inc.,* 128 B.R. 382, 387 (E.D.Pa. 1991). On the contrary, "Section 1112(b) requires a court to move to a second, analytically separate step and to base its decision whether to dismiss or convert on the 'the best interest of creditors and the estate'." *Mechanical Maintenance, Inc.,* 128 B.R. at 388; *see In re Forster,* 162 B.R. 478, 484 (Bankr.N.D.Ohio 1993). "Thus, ... the inquiry for this element cannot be completed without comparing the creditors' interests in bankruptcy with those they would have under state law." *Rollex Corp. v. Associated Materials, Inc. (In re Superior Siding & Window, Inc.),* 14 F.3d 240, 243 (4th Cir. 1994) (citation omitted).

Should dismissal be granted, the DIP's unsecured creditors, who have been held at bay for approximately 18 months, would be required to pursue their claims against the DIP in state court. Here, as in *In re MacDonald* where this Court declined to permit a debtor to voluntarily dismiss his chapter 7 case, "[t]his remedy may not now be speedy or adequate due to the delay experienced as a result of [the DIP's] petition". *In re MacDonald,* 73 B.R. 254, 257 (Bankr.N.D.Ohio 1987); *see also Mechanical Maintenance, Inc.,* 128 B.R. at 382 (remanding to bankruptcy court for consideration of creditors' argument that they were entitled to superpriority under § 506(c)); *In re Warner,* 83 B.R. 807, 811 (M.D.Fla.1988) (refusing to permit debtor to dismiss chapter 11 case where facts indicated that "one creditor ha[d] already obtained a $22 million judgment against the Debtor and, if the case [was] dismissed, that creditor alone could possibly end up with all of the Debtor's known available assets").

■ In deciding this motion, the Court must consider the interests of all of the creditors of the estate. *See In re Superior Siding & Window, Inc.,* 14 F.3d at 241 (reversing bankruptcy court dismissal of case where dismissal was based on the fact that

" 'the consensus of a majority of [the] creditors' favored it"). "[The] policy of equality among creditors, fundamental to the bankruptcy law, is one of the factors to be considered in determining the 'best interest of the creditors' under § 1112(b)". *In re Superior Siding & Window, Inc.*, 14 F.3d at 243; *c.f. Windsor on the River Associates, Ltd. v. Balcor Real Estate Finance, Inc. (In re Windsor on the River Associates, Ltd.)*, 7 F.3d 127, 132 (8th Cir.1993) (stating that one of the "primary functions" of bankruptcy law is to discourage " 'side dealing' between the shareholders of a corporation and some creditors to the detriment of other creditors") (citation omitted).

The Arbitration Agreement provides that the Note Receivable "will not be sold, transferred, assigned, or encumbered, other than in the ordinary course of business, without written notification to [Cordes]". The Arbitration Agreement further "enjoin[s] ... [the DIP] ... from making any disposition of assets outside the ordinary course of business pending the Decision of the Arbitrator". Nevertheless, once the DIP's bankruptcy case is dismissed, no provision exists for the notification of the DIP's other creditors of a transfer of the DIP's interest in the Note Receivable. Indeed, in the instant case where the Note Receivable represents the DIP's largest asset and a substantial dollar amount of the DIP's assets are intangible, the Court finds that dismissal of the DIP's bankruptcy case would not adequately protect the interests of unsecured creditors.

Again, the Court finds it important to note that the Alleged Consents, obtained under conditions not disclosed by the record, do not mandate dismissal. As the UST noted at the Hearing, CEF's conveyance of the Bond represents a material financial transaction. CEF posted the Bond subsequent to the date that creditors were furnished with the DIP's second amended plan and disclosure statement. The Alleged Consents give no indication that the DIP's creditors were furnished with information relating to the DIP's conveyance of the Bond at the time that the Consents were executed.

As noted by the UST at the Hearing, the dismissal of the DIP's chapter 11 case would likely not provide creditors in this bankruptcy case with adequate protection should the DIP decide to file another chapter 11 petition. Similarly, the creditors in this bankruptcy case may not be adequately protected should an involuntary petition be filed against the DIP subsequent to dismissal of the DIP's chapter 11 case.

Lastly, the DIP's argument that creditors would not be prejudiced by dismissal of the DIP's bankruptcy case as they may always pursue remedies under state fraudulent transfer law is specious.

## UST'S MOTION TO CONVERT

### Standing of the UST to Adopt Cordes' Motion to Convert Under 11 U.S.C. § 1112(b)

At the Hearing, Cordes withdrew his motion to convert the DIP's chapter 11 case, subject to Court approval. The Court permitted the UST to adopt said motion.

The DIP objected to allowing the UST to proceed on the motion to convert, arguing that the UST was without standing to prosecute a motion to convert under § 1112(b). As the Court noted in overruling the DIP's motion, the UST does, indeed, have standing to prosecute the motion to convert. Section 1112(b) clearly grants the UST standing to move for conversion or dismissal. *See* 11 U.S.C. § 1112(b) (motion may be brought by "a party in interest or the United States trustee"). Significantly, a written motion to convert is not required as long as a debtor is placed on notice as to "the nature of the motion and the identity of the movant". *A. Illum Hansen, Inc. v. Tiana Queen Motel, Inc. (In re Tianna Queen Motel, Inc.)*, 749 F.2d 146, 149 (2nd Cir.1984), *cert. denied*, 471 U.S. 1138, 105 S.Ct. 2681, 86 L.Ed.2d 699 (1985). Furthermore, the broad language of § 307 provides that "[t]he United States trustee may raise and may appear and be heard on any issue in any case or proceeding under this title". *c.f. Morgenstern v. Revco D.S., Inc. (In re Revco)*, 898 F.2d 498 (6th Cir.1990) (United States Trustee has standing to appeal decision of bankruptcy court refusing to appoint examiner).

The Court found that conditioning the withdrawal of Cordes' motion was appro-

priate in this contested matter. *See* Fed. R.Bankr.P. 7041(a)(2) ("[e]xcept as provided in paragraph (1) of this subdivision of this rule, an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper"); *see also* Fed. R.Bankr.P. 9014 (stating that in contested matters, "unless the court otherwise directs, [Rule 7041] shall apply"). The pretrial conference on this contested matter was held on March 16, 1994. At this pretrial conference which took place approximately one month before the Hearing, the UST sought, and was granted, leave to file a supplemental statement wherein the UST requested that the Court convert this case to a chapter 7 proceeding. *See* Fed.R.Bankr. P. 7016(e) (stating that a pretrial order "shall control the subsequent course of the action unless modified by a subsequent order"). The UST's supplemental statement placed the DIP squarely on notice that the UST intended to present evidence in support of the conversion of the DIP's bankruptcy case. *See* Supplemental Statement of the United States Trustee, filed April 4, 1994, p. 5–6, para. 10. Moreover, Cordes' motion to convert the DIP's chapter 11 case placed the DIP on notice that the Court would consider conversion or dismissal of the DIP's chapter 11 case at the Hearing.

### Burden of Proof

 The UST bears the burden of proof on his motion by the preponderance of the evidence. *In re A–K Enterprises, Inc.*, 111 B.R. 149 (Bankr.N.D.Ohio 1990).

### Conversion or Dismissal for Bad Faith Under 11 U.S.C. § 1112(b)

"It is well-settled that even though Chapter 11 does not expressly so state, bad faith may serve as a ground for dismissal of a petition." *Michigan Nat'l Bank v. Charfoos (In re Charfoos)*, 979 F.2d 390, 392 (6th Cir.1992) (citations omitted). " '[N]o list is exhaustive of all the conceivable factors that could be relevant in analyzing a particular debtor's good faith' ". *Charfoos*, 979 F.2d at 393 (quoting *In re Caldwell*, 851 F.2d 852, 860 (6th Cir.1988)).

 In certain circumstances, violation of court orders can constitute cause for conversion or dismissal under § 1112(b). *See In re Forster*, 162 B.R. at 482–83 (citing cases); *In re Wells*, 71 B.R. 554 (Bankr.N.D.Ohio 1987) (sua sponte dismissal of chapter 11 case for failure to comply with court orders).

 Similarly, the filing of materially inaccurate monthly operating reports can represent a factor in a court's finding of "cause" under § 1112(b). As the Court noted in *In re Berryhill*,

[t]imely and accurate financial disclosure is the life blood of the Chapter 11 process. Monthly operating reports are much more than busy work imposed upon a Chapter 11 debtor for no reason other than to require it to do something. They are the means by which creditors can monitor a debtor's post-petition operations. *In re Chesmid Park Corp.*, 45 B.R. 153, 159 (Bankr.E.D.Va.1984). As such, their filing is very high on the list of fiduciary obligations imposed upon a debtor in possession. *In re McClure*, 69 B.R. 282, 290 (Bankr.N.D.Ind.1987).

*In re Berryhill*, 127 B.R. 427, 433 (Bankr. N.D.Ind.1991).

 The DIP failed to provide notice to creditors or obtain court approval prior to posting the Bond. Nor did the DIP disclose this transaction in its operating reports. Contrary to the DIP's assertions, the DIP's posting of the DIP's real property as a bond to stay execution of the judgment on the Contract Action against CEF and the DIP represents a "transfer" of the DIP's property. *See In re Thomson McKinnon Securities Inc.*, 125 B.R. 94, 96 (Bankr.S.D.N.Y. 1991) (finding that "[t]here [was] no question" that the debtor's posting of cash bond with a state court to stay execution of judgment represented a "transfer" under the Bankruptcy Code).

 Moreover, even if the Court did not view the conveyance of the Bond as a transfer of estate property, § 363(b)(1) proscribes the DIP's "use" of estate property which use is not in the ordinary course of business. This unauthorized transaction did not repre-

sent the use of estate property in the ordinary course of business by the DIP. Creditors were entitled to notice and a hearing prior to the DIP's conveyance of the Bond. *See* 11 U.S.C. § 363(b)(1) (creditors entitled to notice and a hearing prior to debtor's use, sale or lease of estate property other than in the ordinary course of business); Fed. R.Bankr.P. 6004(a) (requiring notice of proposed use, sale or lease of estate property not in the ordinary course of business). Indeed, creditors are entitled to determine for themselves " 'what will benefit and what will prejudice . . . them' ". *Forster*, 162 B.R. at 483 (quoting *Chalik v. Moorefield (In re Chalik)*, 748 F.2d 616, 618 (11th Cir.1984)).

In light of the fact that the conveyance of the Bond followed the DIP's filing of an adversary proceeding in this bankruptcy case seeking to enjoin Cordes' foreclosure on the judgment obtained in the Contract Action against CEF, the Court must agree with the UST that in conveying the Bond "the [DIP] has mortgaged its principal place of business to protect [CEF] from having his personal assets seized to satisfy [the] joint obligation of [CEF and the DIP]". *See* Supplemental Statement of the United States Trustee at p. 3–4, para. 7.

The conveyance of the Bond does not represent the first instance where the DIP has made an unauthorized postpetition transfer of estate property. A review of the DIP's second amended disclosure statement indicates that certain "inadvertent" transfers were made to Fifth Third Bank subsequent to the Petition Date. *See* Second Amended Disclosure Statement at p. 6, para. 1.

Additionally, the DIP's failure to list a judgment lien obtained by Cordes in the amount of $321,750.00 on its statement of financial affairs cannot be excused as the product of inadvertence. This judgment lien was obtained by Cordes to secure his judgment in the Contract Action.

At the Hearing, the DIP argued that it was not required to disclose this judgment lien in the amount of $321,750.00 on its statement of affairs as such judgment lien did not represent a transfer. This argument is spurious. *See Evans v. Schneer (In re Evans)*, 30 B.R. 744 (Bankr.N.D.Ohio 1983) (judicial lien represents a transfer); *Ernst v. Sears, Roebuck & Co.*, 26 B.R. 959, 961 (Bankr. S.D.Ohio 1983) (judgment lien represented preferential transfer); *see also Carter v. HCL Leasing Corp. (In re Martin)*, 87 B.R. 394, 396 (Bankr.E.D.N.C.1988) (judgment lien represented transfer subject to avoidance as preferential transfer); *In re Pouncey*, 59 B.R. 615 (Bankr.M.D.Ala.1986) (judgment liens represented preferential transfers); *Pongetti v. Ship 'N Shore, Inc. (In re Underwood)*, 24 B.R. 503 (Bankr.N.D.Miss. 1982) (judgment lien constituted preferential transfer); *Camacho v. Beneficial Finance Co. of Sterling (In re Camacho)*, 18 B.R. 967, 968 (Bankr.D.Neb.1982) (judgment lien represents transfer).

Moreover, the Court cannot agree with the DIP's counsel that the DIP's failure to list an executory contract with Sentex, a corporation wholly owned by KF who is an insider of the DIP, on its bankruptcy schedules represents a "hypertechnical" violation of the DIP's fiduciary duties. "If a debtor chooses to seek the protection of the bankruptcy court, it must play by the rules". *In re Nugelt, Inc.*, 142 B.R. 661, 668 (Bankr.D.Del.1992).

Lastly, the Court cannot condone the DIP's continual mischaracterization of payments received from the Note Receivable as "operating income" on its operating reports. Such mischaracterization obfuscates the fact that the DIP has been consuming an estate asset, the Note Receivable, throughout this bankruptcy case to fund its current operations. Additionally, the DIP has continually failed to adequately reflect the Note Receivable in its operating reports.

Therefore, the Court finds that "cause" exists for conversion or dismissal of the DIP's chapter 11 case.

**Continuing Loss to or Diminution of the Estate and Absence of a Reasonable Likelihood of Rehabilitation**

■ The Court further finds that the continuing diminution of the estate and the absence of a reasonable likelihood of rehabilitation of the DIP represents "cause" for conversion or dismissal under § 1112(b).

Section 1112(b)(1) contemplates a "twofold" inquiry into whether there has been a "continuing diminution of the estate and absence of a reasonable likelihood of rehabilitation." *In re Photo Promotion Associates, Inc.,* 47 B.R. 454, 458 (Bankr. S.D.N.Y.1985) (citations omitted); *see Clarkson v. Cooke Sales and Service Co. (In re Clarkson),* 767 F.2d 417, 420 (8th Cir.1985) (bankruptcy court properly dismissed case under § 1112(b)(1) upon finding of an absence of sufficient financial data and "certain sources of income" coupled with an erosion in creditors' positions); *In re Tianna Queen Motel, Inc.,* 749 F.2d at 151–52 (debtor's failure to "devise a reorganization plan grounded in reality" within 15 months of petition warranted conversion under § 1112(b)(1), (2) and (3)), *cert. denied,* 471 U.S. 1138, 105 S.Ct. 2681, 86 L.Ed.2d 699 (1985).

First, the Court finds that there has been a diminution of the estate. "All that need be found is that the estate is suffering some diminution in value". *In re Kanterman,* 88 B.R. 26, 29 (S.D.N.Y.1988). Significantly, the monthly payments received from the Note Receivable, the largest estate asset, have been consumed by the DIP. The DIP's assertions that the estate has not been diminished by its expenditure of the receipts from the Note Receivable are incredible. *C.f. In re Rundlett,* 136 B.R. 376 (Bankr. S.D.N.Y.1992) (finding diminution of estate where only income funding plan was income from insurance policy which represented estate property and such income was being disbursed to fund debtor's personal expenses). The record is devoid of credible evidence that expenditures made by the DIP and payments to Sentex have benefitted the estate. Absent the DIP's disingenuous characterization of funds received from the Note Receivable as "operating income", a review of the DIP's operating reports indicate the DIP is operating at a loss.

Second, the Court finds that the DIP has failed to demonstrate a "reasonable likelihood of rehabilitation". *See Clarkson,* 767 F.2d at 420 (dismissal warranted where "the absence of financial data and certain sources of income for the [debtors] indicate[d] the

absence of a reasonable likelihood of rehabilitation"); *Tianna Queen Motel, Inc.,* 749 F.2d at 146 (conversion under § 1112(b)(1), (2) and (3) warranted in light of debtors' "failure ... to demonstrate that their prospects for prompt rehabilitation were based upon anything more substantial than [their] boundless confidence" in the 15 months after the filing of a chapter 11 petition).

In light of the DIP's failure to provide evidence which would indicate that the DIP will realize any income from its participation in the Sentex Agreement or from any other source, the Court finds that the DIP does not have a reasonable likelihood of rehabilitation. *See In re Wright Air Lines, Inc.,* 51 B.R. 96 (Bankr.N.D.Ohio 1985) ("[r]ehabilitation as used in 11 U.S.C. Section 1112(b)(1) means 'to put back in good condition; re-establish on a firm, sound basis'") (citation omitted).

**Conversion or Dismissal**

Lastly, as fully set forth on pp. 927–28 *supra,* the Court finds that dismissal of the DIP's chapter 11 case would not be in the best interests of creditors and the estate. Furthermore, the Court finds that the DIP's case should be converted to a case under chapter 7.

In light of the foregoing, it is therefore

ORDERED that the DIP's motion to dismiss its chapter 11 case be, and it hereby is, denied. It is further

ORDERED that the United States Trustee's motion to convert the DIP's chapter 11 case to a case under chapter 7 be, and it hereby is, granted. It is further

ORDERED that the United States Trustee's motion to appoint a trustee or an examiner be, and it hereby is, dismissed as moot. It is further

ORDERED that, pursuant to 11 U.S.C. § 348(a), the conversion of this case to a case under chapter 7 constitutes an Order for Relief under Chapter 7. It is further,

ORDERED that pursuant to § 348(c) and 11 U.S.C. § 342, the Clerk of this Court give "such notice as is appropriate of an Order for Relief in a case under this Title." It is further

ORDERED that, pursuant to Bankruptcy Rules 1019(2) and 2002(f)(4), the Clerk of this Court shall give notice of the entry of this Order of conversion. It is further,

ORDERED that, pursuant to Bankruptcy Rule 1019(5), the DIP shall forthwith turn over to the Interim Chapter 7 Trustee, all records and property of the estate in their possession or control. It is further,

ORDERED that the DIP prepare and file in this Court, within 30 days of the date of this Order, a separate schedule listing unpaid obligations incurred after the filing of the petition under Chapter 11, including the amounts owing, the creditors' names and their addresses or places of business, including matrix, and a statement of all contracts, executory in whole or in part, assumed or entered into after the filing of the petition, together with a final report and account showing all receipts and disbursements of funds, in accordance with Rule 1019(6), Rules of Bankruptcy Procedure.

## OPINION AND ORDER DENYING DEBTOR'S MOTION TO ALTER OR AMEND JUDGMENT, MOTION FOR NEW TRIAL, MOTION TO AMEND FINDINGS AND JUDGMENT, MOTION FOR RELIEF FROM JUDGMENT AND GRANTING UNITED STATES' TRUSTEE'S MOTION TO STRIKE

This matter is before the Court on Continental Holdings, Inc.'s (the "DIP") motion to alter or amend this Court's opinion and order dated April 26, 1994 (the "Opinion") pursuant to Fed.R.Bankr.P. 9023(e), motion for a new trial pursuant to Fed.R.Bankr. P. 9023(a), motion to amend the findings and the judgment contained in the Opinion pursuant to Fed.R.Bankr.P. 7052(b), and motion to grant the DIP relief from judgment pursuant to Fed.R.Bankr.P. 9024(b). The United States Trustee ("UST") has filed objections to the DIP's motions. The UST has further moved to strike Exhibit B which the DIP has appended to its post-trial motions. The Court finds that the UST's motion to strike the DIP's Exhibit B is well taken and should be granted. The Court further finds that the DIP's respective motions under Fed.

R.Bankr.P. 9023, 9024 and 7052 are not well taken and should be denied.

### FACTS

The DIP provided notice to its creditors of its motion to dismiss its chapter 11 case. However, the DIP argues that the fact that its creditors purportedly did not receive notice of a motion to convert the case entitles the DIP to either a new trial, an amendment of the Opinion or relief from judgment.

The DIP has further appended a letter from Charles E. Friesner, Jr.'s attorney Brian Ramsey (the "Letter") to its post-trial motions. According to the DIP, the Letter entitles the DIP to either a new trial, an amendment of the Opinion or relief from judgment.

### DISCUSSION

### THE UST'S MOTION TO STRIKE EXHIBIT B IN DEBTOR'S MOTION FOR POST–JUDGMENT RELIEF

■ The Court finds that the UST's motion to strike the Letter is well taken and should be granted. As noted by the UST, the Letter and the information attached to the Letter represent either hearsay or "hearsay included within hearsay". See Fed. R.Evid. 802 ("[h]earsay is not admissable except as provided by these rules or by other rules prescribed by the Supreme Court pursuant to statutory authority or by Act of Congress"); Fed.R.Evid. 805 ("[h]earsay included within hearsay" is only admissable if "each part of the combined statements conforms with an exception to the hearsay rule provided in [the Federal Rules of Evidence]"). Additionally, the contents of the Letter have not been authenticated. See Fed.R.Evid. 901. Thus, the Court may not consider the inadmissable evidence contained in the Letter in ruling upon the DIP's motions.

As the Seventh Circuit has noted in the analogous context of deciding a motion for summary judgment,

[s]upporting materials designed to establish issues of fact in a summary judgment proceeding 'must be established through

one of the vehicles designed to ensure reliability and veracity.... When a party seeks to offer evidence through other exhibits, they must be identified by affidavit or otherwise made admissable in evidence'.

*Friedel v. City of Madison,* 832 F.2d 965, 970 (7th Cir.1987) (quoting *Martz v. Union Labor Life Insurance Co.,* 757 F.2d 135, 138 (7th Cir.1985)).

### THE DIP'S MOTION TO ALTER OR AMEND JUDGMENT

While the Rule itself provides no standard for when a ... court may grant such a motion, courts interpreting Rule 59(e) have recognized three grounds for amending an earlier judgment: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or to prevent a manifest injustice.

*Hutchinson v. Staton,* 994 F.2d 1076, 1081 (4th Cir.1993); (citations omitted); *cf. In re Oak Brook Apartments of Henrico County, Ltd.,* 126 B.R. 535, 536 (Bankr.S.D.Ohio 1991) (stating that Rule 59(e) motions "are appropriate only to correct 'manifest errors of fact or law' or to present newly discovered evidence") (citing *In re Cafferky,* 39 B.R. 330, 335 (Bankr.M.D.Tenn.1984)).

### *The Adequacy of the Notice Provided to the DIP's Creditors*

The DIP's argument that it was denied due process because the DIP's creditors were not informed that a motion was pending which sought to convert the DIP's chapter 11 case to a case under chapter 7 is not well taken.

█ At the outset, the Court notes that the DIP lacks standing to assert the due process rights of creditors. *Kane v. Johns–Manville Corp. (In re Johns–Manville Corp.),* 843 F.2d 636, 642–46 (2nd Cir.1988) (holding that personal injury claimants could not assert the due process rights of future personal injury claimants). As the *Johns–Manville* court noted, one of the primary concerns in limiting a party's standing to assert the rights of third parties is that "'third parties themselves usually will be the best proponents of their own rights.'" *In re*

*Johns–Manville Corp.,* 843 F.2d at 643 (quoting *Singleton v. Wulff,* 428 U.S. 106, 113–14, 96 S.Ct. 2868, 2873–74, 49 L.Ed.2d 826 (1976)).

█ Furthermore, the Court disagrees with the DIP's assertion that "none of [the] creditors had notice that this case could possibly be converted". *See* 11 U.S.C. § 102(1) ("'after notice and a hearing', or a similar phrase—(A) means after such notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances").

In accordance with L.R. 4:0.8(a)(4)(B), The DIP provided creditors with notice of its motion to dismiss its chapter 11 case pursuant to 11 U.S.C. § 1112(b). Both the plain language of 11 U.S.C. § 1112(b) and the cases interpreting this provision indicate that in deciding a motion under § 1112(b) a court will exercise its discretion in determining whether to "convert a case under [chapter 11] to a case under chapter 7 of [title 11] or [to] dismiss a case under [chapter 11], whichever is in the best interest of creditors and the estate". 11 U.S.C. § 1112(b); *see In re Mechanical Maintenance, Inc.,* 128 B.R. 382 (E.D.Pa.1991) (vacating bankruptcy court's order granting debtor's motion to dismiss and remanding to bankruptcy court for consideration of creditors' argument that they were entitled to superpriority under § 506(c); *In re Klenosky,* 130 B.R. 132, 135 (E.D.N.Y. 1991) (stating that "'the determining factor, is not whether a party in interest has requested a conversion or dismissal, but rather whether dismissal or conversion would be in the best interest of creditors and the estate'") (quoting *In re Larmar Estates,* 6 B.R. 933, 937 (E.D.N.Y.1980) and citing 5 Collier on Bankruptcy, § 1112.03[d][iv] (15th ed. 1979)); *In re Warner,* 83 B.R. 807 (Bankr.M.D.Fla.1988) (refusing to permit dismissal on debtor's motion); *app'l dism'd,* 94 B.R. 734 (M.D.Fla.1988); *In re The Ledges Apartments,* 58 B.R. 84, 88 (Bankr.D.Vt. 1986) ("[a]s a matter of law, [a] [c]ourt may, in its discretion, convert a Chapter 11 case to a liquidation case under Chapter 7 even if a party in interest ... has moved only for dismissal" (citing 11 U.S.C. § 1112(b))); *c.f. In re David McCraney,* unpublished, Case

No. 3:93CV7014 (N.D.Ohio 1993) (wherein Judge Potter held that a chapter 13 case which had been previously dismissed could be reopened by bankruptcy court under § 105 to "prevent an abuse of process" notwithstanding the debtor's claim of an unfettered right to dismiss). The Bankruptcy Code neither mandates nor presumes that a debtor's motion to dismiss its chapter 11 case will be granted. *Compare* 11 U.S.C. § 1112(b) (dismissal within court's discretion upon a finding of "cause") *with* 11 U.S.C. § 1208(b) (court "shall dismiss" a chapter 12 case "[o]n request of the debtor at any time"); 11 U.S.C. § 1307(b) (court "shall dismiss" chapter 13 case "[o]n request of the debtor at any time"). Therefore, the Court cannot conclude that "none of [the] creditors had notice that this case could possibly be converted". *See Zolg v. Kelly (In re Kelly),* 841 F.2d 908, 915–16 (9th Cir.1988) (rejecting the debtors' argument that they were "unable to ascertain what facts would be considered at [a § 707(b) ] hearing" where the statutory language of § 707(b) and the case law interpreting such statutory language placed them on notice as to the facts to be considered at such a hearing); *In re Slater,* 49 B.R. 501, 502 (Bankr.D.Del.1985) (rejecting debtor's assertion that he did not know what matters were pending before the court where notice received from court contained proper reference to Bankruptcy Code section but improper reference to subsection); *see also Turney v. Federal Deposit Insurance Corp.,* 18 F.3d 865, 869 (10th Cir.1994) (rejecting debtor's argument that he had been denied due process where his "contentions reflect[ed] nothing more than a failure to comprehend what was set before him").

Furthermore, the Court finds it important to note that the evidence presented by the UST in opposition to the DIP's motion under § 1112(b) and in support of the UST's motion under § 1112(b) was the same in all material respects.

The cases cited by the DIP in its Supplement to Motion to Amend Findings of Fact, Etc. are clearly distinguishable from the instant contested matter in light of the fact that the DIP provided its creditors with notice of a pending § 1112(b) motion in the instant contested matter. *C.f. In re Walker,* 149 B.R. 511 (Bankr.N.D.Ill.1992) (creditor which received no notice of bar date for filing complaint objecting to discharge was entitled to extension of time); *In re Hobdy,* 130 B.R. 318 (9th Cir. BAP 1991) (creditor who received no notice "that debtor intended to lodge, through its proposed plan, an objection to the [creditor's] claim" was not bound by confirmed plan).

### Whether the DIP's Purported Solvency Warrants Dismissal

■ The conclusory assertions of the DIP's counsel do not represent evidence which can be weighed by the Court in evaluating the DIP's motion. Again, the fact that the DIP purports to be solvent does not warrant dismissal. *See In re E. Paul Kovacs And Co., Inc.,* 16 B.R. 203, 205 (Bankr. D.Conn.1981) (court found conversion warranted in case where the debtor's assets were purportedly "double the amount of its debts" and stated that "[w]here ... a debtor in possession is oblivious to the fiduciary responsibilities imposed upon it in dealing with property of the estate, conversion will normally be justified"); *see also In re Sal Caruso Cheese, Inc.,* 107 B.R. 808, 818 (Bankr.N.D.N.Y.1989) (conversion warranted where debtor's " 'shennanigans' " convinced the court that the appointment of an independent trustee was warranted to objectively determine the "affairs of the estate" and to "begin to maximize its value for the benefit of [the debtor's creditors]") (citation omitted); *In re Natrl Plants And Lands Management Co., Ltd.,* 68 B.R. 394, 396 (Bankr. S.D.N.Y.1986) (conversion warranted where there were serious questions as to whether the debtor's primary loyalty was to creditors or to its primary shareholder); *In re W.J. Rewoldt Co.,* 22 B.R. 459, 462 (Bankr. E.D.Mich.1982) (conversion warranted where debtor has failed to properly perform fiduciary duties) (citation omitted).

### New Evidence

The DIP has provided no admissable evidence in support of its motion to alter or amend judgment based upon "new evidence". Thus, the DIP's argument that the Opinion

should be altered or amended based upon "new evidence" is not well taken.

Nor is granting the DIP's motion necessary to prevent a manifest injustice.

## THE DIP'S MOTION FOR A NEW TRIAL OR TO AMEND THE JUDGMENT PURSUANT TO RULE 9023(a)

Again, the DIP has failed to provide the Court with admissable evidence in support of its motion for a new trial or to alter or amend judgment. Further, the DIP has also failed to convinced the Court that the Opinion contains an error of law. Moreover, the DIP has not provided the Court with sufficient grounds to support a finding that the Court should open the record to take additional testimony. Therefore, the DIP's motion for a new trial or to amend the judgment is not well taken. *See* Fed.R.Bankr.P. 9023(a).

## THE DIP'S MOTION TO AMEND FINDINGS AND JUDGMENT PURSUANT TO RULE 7052(b)

There is no admissable evidence before the Court in support of the DIP's motion pursuant to Fed.R.Bankr.P. 7052(b). Additionally, the DIP has not convinced the Court that the Opinion contains an error of law. In consideration of the DIP's arguments and the evidence adduced at the Hearing, the Court finds that the DIP's motion to amend findings and judgment is not well taken.

## THE DIP'S MOTION FOR RELIEF FROM JUDGMENT PURSUANT TO RULE 9024(b)

Lastly, the DIP argues that it is entitled to relief under Fed.R.Bankr. P. 9024(b)(2), (4) and (6). The DIP has failed to provide any admissable evidence in support of this motion. Furthermore, the DIP has not convinced the Court that the Opinion contains an error of law. In reviewing the arguments of counsel and the evidence presented at the Hearing, the Court finds that the DIP is not entitled to relief from judgment.

In light of the foregoing, it is therefore

ORDERED that the UST's motion to strike the Letter, which represents the DIP's Exhibit B, be, and it hereby is, granted. It is further

ORDERED that the DIP's motion to alter or amend the Opinion be, and it hereby is, denied. It is further

ORDERED that the DIP's motion for a new trial be, and it hereby is, denied. It is further

ORDERED that the DIP's motion to amend findings and judgment be, and it hereby is, denied. It is further

ORDERED that the DIP's motion for relief from judgment be, and it hereby is, denied.

## OPINION AND ORDER DENYING R. KEVIN MCINTYRE, JAMES MCINTYRE, WILLIAM LINDEMEYER & CO., AND PURDUE LAW OFFICES MOTION TO AMEND FINDINGS AND VACATE JUDGMENT

This matter is before the Court on R. Kevin McIntyre, James McIntyre, William Lindemeyer & Co., and the Purdue Law Offices (collectively the "Purdue Creditors") motion to amend findings and vacate this Court's opinion and order dated April 26, 1994 (the "Opinion") which converted Continental Holdings, Inc.'s (the "DIP") chapter 11 case to a case under chapter 7. The United States Trustee ("UST") has filed an objection to this motion. Upon consideration thereof, the Court finds that the Purdue Creditors' motion is not well taken and should be overruled.

### *FACTS*

An examination of the case file in the DIP's case indicates that David C. Purdue and John C. Purdue did not enter an appearance on behalf of any of the aforementioned Purdue Creditors until May 3, 1994, a date subsequent to the date of the hearing on the DIP's motion to dismiss its chapter 11 case and the UST's motion to convert the DIP's chapter 11 case (the "Hearing"). Nonetheless, for purposes of deciding this motion, the Court shall assume that David C. Purdue and John C. Purdue did, in fact, represent the Purdue Creditors at the time of the Hearing.

The Purdue Creditors' motion does not provide any probative evidence.

The Purdue Creditors' motion acknowledges that the Purdue Creditors were provided with notice of the DIP's motion to dismiss pursuant to § 1112(b). However, the Purdue Creditor' motion asserts that the Purdue Creditors were denied due process because they were not apprised of the UST's motion to convert pursuant to § 1112(b).

The Purdue Creditors' motion asserts that the Purdue Creditors "consented to dismissal". The Purdue Creditors' motion further asserts that "[h]ad the case been dismissed, it is believed that all of the creditors would have paid and the debtor would have been preserved as a company with which the creditors could conduct future business dealings". The Purdue Creditors' motion also asserts that "the creditors have missed the opportunity for prompt payment, without due process".

In addition, the Purdue Creditors assert that their "claims are 93.81 percent of all unsecured claims". The Purdue Creditors further assert that "[g]ranting [their] motion to amend findings and vacate judgment [would] not prejudice the rights of the other 6.19 percent of the unsecured claims".

## DISCUSSION

### THE PURDUE CREDITORS' MOTION TO ALTER OR AMEND JUDGMENT

The Court finds that the Purdue Creditors' motion to alter or amend judgment is not well taken and should be denied.

> While the Rule itself provides no standard for when a … court may grant such a motion, courts interpreting Rule 59(e) have recognized three grounds for amending an earlier judgment: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or to prevent a manifest injustice.

*Hutchinson v. Staton,* 994 F.2d 1076, 1081 (4th Cir.1993) (citations omitted); *c.f. In re Oak Brook Apartments of Henrico County, Ltd.,* 126 B.R. 535, 536 (Bankr.S.D.Ohio 1991) (stating that Rule 59(e) motions "are appropriate only to correct 'manifest errors of fact or law' or to present newly discovered evi-

dence") (citing *In re Cafferky,* 39 B.R. 330, 335 (Bankr.M.D.Tenn.1984)).

### The Adequacy of the Notice Provided to the Purdue Creditors

The Court concludes that the Purdue Creditors were not deprived of due process.

In accordance with L.R. 4:0.8(a)(4)(B), The DIP provided creditors with notice of its motion to dismiss its chapter 11 case pursuant to 11 U.S.C. § 1112(b). Both the plain language of 11 U.S.C. § 1112(b) and the cases interpreting this provision indicate that in deciding a motion under § 1112(b) a court will exercise its discretion in determining whether to "convert a case under [chapter 11] to a case under chapter 7 of [title 11] or [to] dismiss a case under [chapter 11], whichever is in the best interest of creditors and the estate". 11 U.S.C. § 1112(b); *see In re Mechanical Maintenance, Inc.,* 128 B.R. 382 (E.D.Pa.1991) (vacating bankruptcy court's order granting debtor's motion to dismiss and remanding to bankruptcy court for consideration of creditors' argument that they were entitled to superpriority under § 506(c); *In re Klenosky,* 130 B.R. 132, 135 (E.D.N.Y. 1991) (stating that " 'the determining factor, is not whether a party in interest has requested a conversion or dismissal, but rather whether dismissal or conversion would be in the best interest of creditors and the estate' ") (quoting *In re Larmar Estates,* 6 B.R. 933, 937 (E.D.N.Y.1980) and citing 5 Collier on Bankruptcy, § 1112.03[d][iv] (15th ed. 1979)); *In re Warner,* 83 B.R. 807 (Bankr.M.D.Fla.1988) (refusing to permit dismissal on debtor's motion), *app'l dism'd,* 94 B.R. 734 (M.D.Fla.1988); *In re The Ledges Apartments,* 58 B.R. 84, 88 (Bankr.D.Vt. 1986) ("[a]s a matter of law, [a] [c]ourt may, in its discretion, convert a Chapter 11 case to a liquidation case under Chapter 7 even if a party in interest … has moved only for dismissal" (citing 11 U.S.C. 1112(b))); *c.f. In re David McCraney,* unpublished, Case No. 3:93CV7014 (N.D.Ohio 1993) (wherein Judge Potter held that a chapter 13 case which had been previously dismissed could be reopened by bankruptcy court under § 105 to "prevent an abuse of process" notwithstanding debtor's claim of an unfettered right to dismiss).

Further, the Bankruptcy Code neither mandates nor presumes that a debtor's motion to dismiss its chapter 11 case will be granted. *Compare* 11 U.S.C. § 1112(b) (dismissal within court's discretion upon a finding of "cause") *with* 11 U.S.C. § 1208(b) (court "shall dismiss" a chapter 12 case "[o]n request of the debtor at any time"); 11 U.S.C. § 1307(b) (court "shall dismiss" chapter 13 case "[o]n request of the debtor at any time"). Therefore, the Court concludes that the Purdue Creditors were clearly on notice that the DIP's chapter 11 case could be converted. *See Zolg v. Kelly (In re Kelly),* 841 F.2d 908, 915–16 (9th Cir.1988) (rejecting the debtors' argument that they were "unable to ascertain what facts would be considered at [a § 707(b) ] hearing" where the statutory language of § 707(b) and the case law interpreting such statutory language placed them on notice as to the facts to be considered at such a hearing); *In re Slater,* 49 B.R. 501, 502 (Bankr.D.Del.1985) (rejecting debtor's assertion that he did not know what matters were pending before the court where notice received from court contained proper reference to Bankruptcy Code section but improper reference to subsection); *see also Turney v. Federal Deposit Insurance Corp.,* 18 F.3d 865, 869 (10th Cir.1994) (rejecting debtor's argument that he had been denied due process where his "contentions reflect[ed] nothing more than a failure to comprehend what was set before him").

Additionally, the Court finds it important to note that the evidence presented by the UST in opposition to the DIP's motion under § 1112(b) and in support of the UST's motion under § 1112(b) was the same in all material respects.

**Whether the Assertions Contained in the Purdue Creditors' Motion Warrant Amendment of Findings of Fact and Vacation of This Court's Judgment**

The conclusory assertions of the Purdue Creditors' counsel do not represent evidence which can be weighed by the Court in evaluating the Purdue Creditors' motion. Moreover, in light of the Court's findings in the Opinion, the assertions of the Purdue Creditors do not alter the Court's conclusion that the DIP's chapter 11 case should be converted to a case under chapter 7.

▮ A court may not base its decision to convert or dismiss a debtor's chapter 11 case merely upon a finding that " 'the consensus of a majority of [the] creditors' favored [dismissal]". *Rollex Corp. v. Associated Materials, Inc. (In re Superior Siding & Window, Inc.),* 14 F.3d 240, 241 (4th Cir.1994). To hold otherwise would be to promote collusion between the debtor and certain creditors to the detriment of other creditors. *See In re Superior Siding & Window, Inc.,* 14 F.3d at 243 (stating that "[the] policy of equality among creditors, fundamental to the bankruptcy law, is one of the factors to be considered in determining the 'best interest of the creditors' under § 1112(b), and it is not served by merely tallying the votes of unsecured creditors and yielding to the majority interest"); *Windsor on the River Associates, Ltd. v. Balcor Real Estate Finance, Inc. (In re Windsor on the River Associates, Ltd.),* 7 F.3d 127, 132 (8th Cir.1993) (stating that one of the "primary functions" of bankruptcy law is to discourage " 'side dealing' " between the shareholders of a corporation and some creditors to the detriment of other creditors) (citation omitted).

▮ Furthermore, undocumented assertions that a debtor is solvent and plans to pay certain creditors promptly do not warrant dismissal of a bankruptcy case.

Lastly, the Court cannot conclude that granting the Purdue Creditors' motion to amend findings and vacate judgment is necessary to prevent a manifest injustice.

In light of the foregoing, it is therefore

ORDERED that the Purdue Creditors' motion to amend findings and vacate judgment be, and it hereby is, overruled.