In re NEW BATT RENTAL CORPORATION,
Debtor.

Bankruptcy No. 96–31236.

United States Bankruptcy Court,
N.D. Ohio,
Western Division.

Jan. 30, 1997.

S. Robert Lyons, Trial Atty., Tax Division, U.S. Dept. of Justice, Washington, DC.

Lenore Kleinman, Office of the U.S. Trustee, Cleveland, OH.

Michael Lorber, Dennis Reimer Co., L.P.A., Twinsburg, OH, for Bankers Trust Co.

Anita Gill, Special Assistant U.S. Atty., Cleveland, OH.

Mark R. McBride, Toledo, OH, for DIP.

Estate of Zenith Batt, Richard Szczepaniak, Toledo, OH.

Roger Goranson, Toledo, OH.

## OPINION AND ORDER GRANTING MOTIONS TO DISMISS CHAPTER 11 CASE

WALTER J. KRASNIEWSKI, Bankruptcy Judge.

This matter is before the Court on United States Department of Justice's ("IRS" 's) motion to dismiss New Batt Rental Corporation's (the "DIP" or "NBRC") chapter 11 case pursuant to 11 U.S.C. § 1112(b). The United States Trustee ("UST") has also filed a motion to dismiss as well as a supplement to such motion. The DIP has filed a response. Based on the evidence adduced at the hearing on this matter, the Court finds that the motions of the IRS and the UST are well taken and that the DIP's chapter 11 case should be dismissed.

### FACTS AND BACKGROUND

Nick Batt ("Batt"), the DIP's president, incorporated NBRC in February, 1996.

The DIP's bankruptcy schedules indicate that the Nick Batt Family Trust owns 100% of the DIP's stock (the "Family Trust"). Batt serves as trustee for the Family Trust.

The beneficiaries of the Family Trust are Batt's children.

On February 27, 1996, Batt quitclaimed five rental real estate properties (the "properties") to the DIP, all of which properties were fully encumbered by prior liens and mortgages. The properties represented substantially all of Batt's assets.

NBRC commenced operations in the rental real estate business on February 27, 1996. Other than Batt, the DIP's only employees during the pendency of its chapter 11 case have been a part-time bookkeeper and a part-time maintenance person.

The DIP filed a petition under chapter 11 of title 11 on April 17, 1996.

### The DIP's Assets and Liabilities

Aside from a bank deposit in the amount of $111.77, the DIP's only assets are the properties, which the DIP values at $196,730.00.

The first mortgages against the properties totaled $149,436.15.

The schedules also list a junior mortgage in favor of the Estate of Batt's late mother, Zenith Batt (the "Junior Mortgage"). Batt testified that his son is the sole beneficiary of a testamentary trust created by the Zenith Batt estate. The DIP asserts that the Junior Mortgage encumbers all of the properties. The IRS and the UST dispute the validity of the Junior Mortgage.

The properties were also subject to IRS liens totaling $204,559.61 which the IRS filed against Batt in 1994 and 1995. The DIP argues that, since the first mortgages and the Junior Mortgage fully encumber the properties, no equity remains in the properties to satisfy the liens of the IRS.

The DIP's only other scheduled liability is for "1996 Cash loans" assertedly received from the Nick Batt Family Trust, the DIP's sole shareholder.

### The Circumstances Surrounding Batt's Transfer of the Properties to the DIP

Revenue Officer Barbara Lambright ("Lambright") testified that the IRS required Batt to prepare personal financial statements in 1995 in order to substantiate his claimed inability to pay his tax liabilities. After concluding from her review that Batt

had provided the IRS with insufficient financial information, Lambright issued levies against the rents from the properties on February 1, 1996.

Batt met with Lambright on February 2, 1996 and on February 22, 1996 in an effort to avoid further levies against the properties. Batt and Lambright also discussed Batt's desire to obtain an administrative lien discharge from the IRS. Lambright testified that, although she explained the IRS's policy with regard to administrative lien discharge, Batt never submitted the required forms to initiate an administrative lien discharge.

Batt testified that he quitclaimed the properties to the DIP on February 26, 1996 in order to forestall the IRS's attempts to levy on the rents from the properties.

While Batt testified that the NBRC "assumed" the mortgages on the properties in exchange for his transfer of the properties to NBRC, the Court found his testimony in this regard to be incredible. Batt testified that his quitclaim deed transferring the properties to NBRC represented the only document evidencing his alleged "assumption" of the mortgages. Nonetheless, the quitclaim deed does not indicate that NBRC assumed the mortgages.

Batt's transfer of the properties to NBRC did not achieve its intended purpose. Lambright testified that, notwithstanding the transfer of the properties to NBRC, the IRS decided that it would continue to levy on the properties based on its conclusion that NBRC was substantively the same entity as Nick Batt.

## The DIP's Chapter 11 Filing

Batt testified that, once it became apparent that the IRS intended to levy against the rents from the properties despite his transfer of the properties to NBRC, he found it necessary to "shift gears" and file a chapter 11 petition.

## Feasibility

Chris Sonson, CPA, a bankruptcy analyst with the UST, testified that the DIP's proposed plan of reorganization, as outlined in the DIP's amended disclosure statement, was not feasible. Sonson testified that the DIP's net income of $2,587.28 during its approxi-

mately 7–1/2 months of postpetition operations was insufficient to fund its proposed plan of reorganization which requires payments of $658.00 dollars per month. Furthermore, Sonson testified that Batt's prior income tax returns indicated that substantially all of the properties had operated at a loss during 1994 and 1995.

Sonson also testified that the DIP's gross rents from postpetition operations fell short of the rent projections contained in the DIP's amended disclosure statement.

Contrary to Sonson's testimony, Batt testified that he feels that the DIP's plan is feasible in light of the cash flow from the properties and the expected positive impact from the sale of the DIP's property at 1106 South McCord Road.

## Batt's Prior Personal Bankruptcy Case

Batt filed a chapter 11 petition on July 17, 1992. Batt was unable to propose a confirmable plan of reorganization after the Supreme Court of Ohio's postpetition suspension of his license to practice law. The Court converted Batt's case to a case under chapter 7 on July 14, 1993. Batt was granted a discharge of his non-tax obligations on November 9, 1993.

### *DISCUSSION*

## APPLICABLE STATUTE

Section 1112(b) of title 11 provides, in relevant part, that:

after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title or may dismiss a case under this chapter, whichever is in the best interest of creditors and the estate, for cause, including—

(1) continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation;

(2) inability to effectuate a plan;

(3) unreasonable delay by the debtor that is prejudicial to creditors[.]

## BURDEN OF PROOF

The movants bear the burden of proof on their motion to dismiss by the preponder-

ance of the evidence. *In re Continental Holdings, Inc.*, 170 B.R. 919, 926 (Bankr. N.D.Ohio 1994) (citations omitted). While a number of courts have stated that a debtor bears the burden of establishing its good faith, *see, e.g., Stage I Land Co. v. United States Dep't of Housing and Urban Dev.*, 71 B.R. 225, 229 (D.Minn.1986) (citations omitted), the Court is unconvinced that a creditor can shift the burden of proof in an action under § 1112(b) merely by alleging that a debtor lacks good faith.

## THE DIP'S ARGUMENT THAT CLAIM OR ISSUE PRECLUSION BAR THE MOTIONS BROUGHT BY THE IRS AND THE UST

■ The DIP argues that a ruling by this Court at a prior hearing on the UST's motion to dismiss bars the instant motion. The Court disagrees because one of the prerequisites for application of res judicata, a final order, is lacking. *See* Stipulation dated June 19, 1996 (continuing UST's motion to dismiss). Although the Court refused to grant the UST's motion at a prior hearing, such motion was continued rather than dismissed.

## THE STANDARD APPLICABLE TO MOTIONS TO DISMISS FOR LACK OF GOOD FAITH UNDER § 1112(b)

The Sixth Circuit has concluded that "bad faith" can represent "cause" for dismissal under § 1112(b). *Trident Assoc. Ltd. Partnership v. Metropolitan Life Ins. Co. (In re Trident Assoc. Ltd. Partnership)*, 52 F.3d 127, 131 (6th Cir.1995) (citing *Laguna Assoc. Ltd. Partnership v. Aetna Casualty & Surety Co. (In re Laguna Assoc. Ltd. Partnership)*, 30 F.3d 734, 737–38 (6th Cir.1994)).

■ While the Sixth Circuit has set forth a number of factors which may guide the Court's discretion in deciding a motion under § 1112(b), *Trident*, 52 F.3d at 131 (citations omitted), the *Trident* court emphasized that a bankruptcy court must exercise its discretion in light of the specific facts of each case. *Id.* (citations omitted). *See Toibb v. Radloff*, 501 U.S. 157, 111 S.Ct. 2197, 115 L.Ed.2d 145 (1991) (held that individual who was not engaged in business was not, per se, barred from filing under chapter 11); *cf. United States v. Noland,* — U.S. —, —, 116 S.Ct. 1524, 1528, 134 L.Ed.2d 748 (1996) ("h[eld] that (in the absence of a need to reconcile conflicting Congressional choices) the circumstances that prompt a court to order equitable subordination must not occur at the level of policy choice at which Congress itself operated in drafting the Bankruptcy Code") (citation omitted). Therefore, in light of *Toibb* and *Trident,* the Court concludes that the "bad faith" doctrine under § 1112(b) permits conversion or dismissal only in circumstances where the facts presented evidence a debtor's intent to abuse the bankruptcy process.

Contrary to the DIP's argument that this Court must find a chapter 11 case to be "objectively futile" in order to grant conversion or dismissal, *Carolin Corp. v. Miller,* 886 F.2d 693 (4th Cir.1989), the Sixth Circuit has not required a showing of "objective futility" in order to support a finding of "cause". *See Michigan Nat'l Bank v. Charfoos (In re Charfoos),* 979 F.2d 390, 394–95 (6th Cir. 1992) (finding § 1112(b) dismissal warranted based on debtor's "(1) factual misrepresentations and omissions on financial statements and bankruptcy pleadings; (2) violations of state court orders; [and] (3) extravagant lifestyle" despite bankruptcy court's finding that "a reasonable probability existed that a plan would be proposed and confirmed"); *Phoenix Piccadilly, Ltd. v. Life Ins. Co. of Va. (In re Phoenix Piccadilly, Ltd.),* 849 F.2d 1393, 1395 (11th Cir.1988) (holding that a debtor's likelihood of successful reorganization did not defeat finding of bad faith).

## THE DIP'S LACK OF GOOD FAITH AND INABILITY TO EFFECTUATE A PLAN REPRESENT "CAUSE" UNDER § 1112(b)

■ Both the DIP's lack of good faith and its inability to effectuate a plan represent "cause" for dismissal or conversion under § 1112(b).

Batt transferred the properties to NBRC in February, 1996 with the actual intent to hinder, delay, or defraud the IRS. First, and most significantly, Batt's testimony indicated that he transferred the properties to NBRC to thwart the levies issued by the

IRS. Second, Batt transferred the properties to NBRC at a time when Bankers Trust Co. had filed a foreclosure proceeding against Batt on the property at 1106 South McCord Road and the IRS had levied on the rents from the properties. The IRS had previously filed tax liens against the properties in 1994 and 1995. Third, NBRC, a corporation in which Batt was the president, was clearly an insider of Batt on the date that Batt transferred the properties to NBRC. Fourth, Batt retained possession of the properties after the transfer. Fifth, the properties which Batt transferred to NBRC constituted substantially all of his assets. Sixth, Batt received no consideration when he transferred the properties to NBRC. The Court found Batt's testimony that NBRC "assumed" the mortgages on the properties at the time of the transfer to be incredible. The deed in which Batt quitclaimed the properties to NBRC makes no mention of any debt assumption by NBRC. Seventh, Batt's testimony made plain that he was insolvent at the time that he transferred the properties to NBRC.

In addition, the Court finds that the DIP has attempted to use the automatic stay as a "weapon of coercion" rather than in a legitimate attempt to reorganize. *Cf. Shapiro v. Wilgus,* 287 U.S. 348, 356, 53 S.Ct. 142, 145, 77 L.Ed. 355 (1932) (concluding that newly formed corporation could not maintain a federal court receivership to hold fraudulently transferred assets beyond the reach of nonassenting creditors where the Court found that debtor was using receivership proceeding as a "weapon of coercion" against its creditors and that corporation was brought "into being with the hindrance and delay of suitors the very aim of its existence").

▊ Moreover, the DIP's inability to effectuate a plan, which in itself constitutes "cause" under § 1112(b)(2), represents circumstantial evidence that the DIP's chapter 11 filing was not in good faith. An inability to effectuate a plan "means that the debtor lacks the ability to formulate a plan or to carry one out." *Hall v. Vance,* 887 F.2d 1041, 1044 (9th Cir.1989). The *Hall* court stated that:

[d]ismissal under § 1112(b)(2) is appropriate where the debtor's failure to file an acceptable plan after a reasonable time indicates its inability to do so whether the reason for the debtor's inability to file is its poor financial condition, the structure of the claims against it, or some other reason.

*Hall,* 887 F.2d at 1044. Here, Sonson's testimony has convinced the Court that the DIP is incapable of meeting its proposed obligations under the plan irrespective of any consideration of the IRS's claim. *See Koerner v. Colonial Bank (In re Koerner),* 800 F.2d 1358, 1368 (5th Cir.1985) (finding conversion warranted after sixteen months where proposed plan was nebulous, infeasible and inadequate); *see also Fossum v. Federal Land Bank (In re Fossum),* 764 F.2d 520 (8th Cir.1985); *In re Ray,* 46 B.R. 424 (S.D.Ga.1984) (finding conversion warranted where debtor failed to propose confirmable plan in approximately one year); *cf. Fishell v. United States Trustee,* 19 F.3d 18, unpublished, 1994 WL 64718 at *2 (6th Cir.1994) (finding conversion warranted for failure to effectuate plan where debtors failed to propose confirmable plan in fourteen months).

Furthermore, contrary to Batt's testimony, the Court finds that this bankruptcy case represents an improper attempt to shelter Batt's assets from liabilities which could not be discharged in an individual chapter 11 case. *See* 11 U.S.C. § 1141(d)(3)(C) (stating that confirmation does not discharge debtor if "the debtor would be denied a discharge under section 727(a) of this title if the case were a case under chapter 7"); 11 U.S.C. § 727(a)(8) (denying discharge where debtor has been granted a chapter 7 discharge within six years prior to the petition date).

### DISMISSAL OF THE DIP'S CHAPTER 11 CASE IS WARRANTED

▊ The facts warrant dismissal rather than conversion. Most importantly, no equity exists in the properties which could be administered for the benefit of unsecured creditors in a chapter 7 case. Further, the DIP's creditors have sufficient state law remedies available to enforce their rights.

In light of the foregoing, it is therefore

ORDERED that New Batt Rental Corporation's chapter 11 case be, and it hereby is, dismissed.