**In re CADIZ PROPERTIES, INC., Debtor.**

No. 01–80459–SAF–11.

United States Bankruptcy Court, N.D. Texas, Dallas Division.

May 16, 2002.

Carolyn Johnsen, Gallagher & Kennedy, Phoenix, AZ, Dean Ferguson, Munsch, Hardt, Kopf & Harr, P.C., Dallas, TX, for Canafina, AG.

William L. Siegel, Seeberger & Siegel, Dallas, TX, for Cadiz Properties, Inc.

David Staber, Akin, Gump, Dallas, TX, for State Street Bank & Trust.

E.P. Keiffer, Hance Scarborough, Dallas, TX, for Alford Refrigerated Warehouse, Inc.

Mark Farha, Bracewell & Patterson, Dallas, TX, for WRI/7080 Express Lane, Inc. and Weingarten Realty Management Co.

## MEMORANDUM OPINION AND ORDER

STEVEN A. FELSENTHAL, Bankruptcy Judge.

Canfina, AG, moves to dismiss the bankruptcy case of Cadiz Properties, Inc., contending that Cadiz lacked the proper authority to file a petition for relief under Chapter 11 of the Bankruptcy Code. Cadiz responded to the motion by asserting that it had the authority to file the petition. Alford Refrigerated Warehouses, Inc., an entity related to Cadiz and also a debtor in possession under Chapter 11, responded similarly by maintaining that it owns the stock of Cadiz. Two secured creditors, State Street Bank & Trust Company, et al. (hereafter "Criimi Mae"), and Weingarten Realty Management oppose the motion, asserting that a dismissal is not in the best interests of the creditors. The court conducted a hearing on the motion on April 16, 2002.

The determination of a motion to dismiss a bankruptcy case constitutes a core matter over which this court has jurisdiction to enter a final order. 28 U.S.C. §§ 157(b)(2)(A) and (O) and 1334. This memorandum opinion contains the court's findings of fact and conclusions of law. Bankruptcy Rules 7052 and 9014.

Canfina loaned Alford $2,600,000, evidenced by a promissory note executed by Alford in 1996, and secured by a deed of trust covering property owned by Alford in Dallas, Texas. In 1997, Alford and Canfina modified their agreement, releasing and discharging the deed of trust, with Alford pledging as substitute collateral its shares of stock in Cadiz. Alford owned 100% of the outstanding shares of Cadiz stock.

Alford and Canfina executed an escrow agreement dated August 31, 1997, and a special power of attorney dated September 12, 1997, under which Alford deposited the Cadiz stock with the escrow agent as security for the repayment of the note. The escrow agreement provided that upon receipt of a notice of default, the escrow agent would release and distribute the Cadiz stock to Canfina.

Canfina contends that in November of 2001, through a series of letters, it issued the requisite notice of default that required the escrow agent to deliver the Cadiz stock to Canfina. However, the escrow agent did not deliver the stock. Nevertheless, on November 15, 2001, Canfina, acting as if it were Cadiz's sole shareholder, adopted a resolution purporting to remove the incumbent Cadiz directors and elect new directors. Canfina contends that those "directors" did not authorize the filing of the Cadiz bankruptcy petition.

Conversely, Cadiz asserts that the stock had not been transferred to Canfina. Con-

sequently, Cadiz argues that Canfina's election of new directors was a meaningless act. Cadiz contends that its board adopted a resolution on December 7, 2001, authorizing the filing of the bankruptcy petition. Cadiz filed its petition on December 7, 2001.

Canfina filed the instant motion to dismiss on February 28, 2002. Canfina moves to dismiss the case under 11 U.S.C. § 1112(b). Section 1112(b) provides that, after notice and a hearing, the court may dismiss a case for cause on request of a party in interest. Canfina contends that the lack of corporate authority for the filing constitutes cause for the dismissal.

The parties agree that prior to the filing of the petition, the escrow agent had not delivered the stock to Canfina. Presumptively, therefore, Alford remained the owner of the Cadiz stock, making the filing facially authorized.

■ However, the parties do have a material dispute over the ownership of the stock at the time of the filing of the petition. If Alford retained an ownership interest in the Cadiz stock, then the Cadiz board had not been changed by Canfina, but rather had authorized the filing. If, on the other hand, Canfina had obtained the stock in satisfaction of the Alford debt, then Canfina had changed the board and the new board had not authorized the filing. This dispute over the ownership of the Cadiz stock may ultimately rebut the presumption, but the dispute cannot be resolved in a contested matter under Bankruptcy Rule 9014. The determination of the ownership of the stock must be resolved in an adversary proceeding. Bankruptcy Rules 7001(2) and (9).

On March 1, 2002, Alford filed an adversary proceeding against Canfina. In count one, Alford seeks declaratory relief that Canfina did not foreclose on the stock and that Alford remains the owner of the stock. Alternatively, in count two, Alford seeks to avoid the transfer of the stock under 11 U.S.C. § 548 and, in count three, to recover the shares of stock under 11 U.S.C. § 550. With its answer, Canfina asserts a counter-claim for a declaration that title to the shares of stock passed to Canfina before the filing of the Cadiz bankruptcy petition. The court has set the trial docket call for the adversary proceeding for July 8, 2002, with the trial to be set the following week, or as soon thereafter as the court's docket will permit. *See* adversary proceeding no. 02–3065.

■ Therefore, the court will adjudicate the ownership issue in that adversary proceeding. As the petition appears facially authorized, the court examines the statutory standard for considering a motion to dismiss, specifically, whether the dismissal "is in the best interest of creditors and the estate." 11 U.S.C. § 1112(b).

With regard to the creditors, Criimi Mae asserts a first lien on the real property owned by Cadiz. Weingarten asserts a lien against the real property. It also appears that the local taxing authorities hold secured claims. Cadiz and Alford have filed motions, in their respective cases, to sell the real property and certain personal property. The debtors have retained professional persons to assist with the sale effort. On March 8, 2002, the court entered an order, in the Alford case, approving bidding procedures for the sale of the property. The sale transaction contemplates a closing by June 24, 2002. Criimi Mae and Weingarten assert that a successful sale will result in payment in full of the Cadiz creditors, including the secured creditors. Criimi Mae and Weingarten state that their best interests are served by giving Cadiz the opportunity in Chapter 11 to pursue the sale.

With regard to the remainder of the estate, Alford asserts that the sale could result in funds, in the Cadiz estate, greater than the amount needed to pay the Cadiz creditors. Should that situation materialize, the owner of the stock of Cadiz will receive a distribution from the Cadiz estate. The dispute between Alford and Canfina over the ownership of the stock will be resolved in the adversary proceeding pending before the court. Therefore, Alford contends that the estate would be best served by continuing the case in Chapter 11 to determine if a sale can be approved and closed, and the adversary proceeding over the stock ownership adjudicated.

Canfina contends that Criimi Mae is protected by its foreclosure rights under non-bankruptcy law and that the stock ownership issue can be resolved in state court. The availability of those remedies are outweighed by the advantages to the creditors of the prospect of payment in full of their claims through a sale under Chapter 11. The resolution of the stock ownership issue in this court will be accomplished without the delay of a dismissal of the case and the commencement of state court litigation.

The court, therefore, concludes that it is in the best interests of the creditors and the estate not to dismiss this case at this time. Subsequent events, including the adjudication of the adversary proceeding, may support a subsequent motion to dismiss.

■ Criimi Mae also argues that Canfina acquiesced in the filing by waiting from the petition date of December 7, 2001, until February 28, 2002, to request dismissal for lack of authority. In reviewing a bankruptcy court's decision not to dismiss a Chapter 7 case under 11 U.S.C. § 707(a), the Fifth Circuit has recognized that a person claiming stock ownership of a debt-or may be barred from complaining about a lack of authority to file a case by waiting too long to raise the issue. *In re Atlas Supply Corp.*, 857 F.2d 1061 (5th Cir.1988). In *Atlas*, the movant waited thirteen months to file the motion to dismiss. In its decision, the Court cited a case involving a four month delay. 857 F.2d at 1064.

In this case, Canfina waited almost three months. During that time, the court considered a motion by Criimi Mae to appoint a Chapter 11 trustee. The court also addressed motions to use cash collateral. But, prior to February 28, 2002, the court had not addressed the retention of all the professional persons needed for a sale. The court had also not yet addressed the sale motion and the process discussed above. Canfina appeared throughout the case, preserving its stock ownership claim for the record. But, Canfina waited to file the motion to dismiss.

Canfina asserts that it waited to allow a redemption time affected by 11 U.S.C. § 108 to expire. Canfina has not established that any redemption period applies to its stock ownership claim.

■ As Canfina filed its motion to dismiss before the court considered the sale and bidding process, the court concludes that Canfina has not waited too long to file the motion to dismiss.

The court visits the presumptive authority for the filing in greater depth. Citing *In re Missionary Baptist Foundation of America, Inc.*, 792 F.2d 502 (5th Cir.1986), Canfina argues that under the escrow agreement, once Canfina gave notice of default to the escrow agent, the agent had only the ministerial authority to deliver the stock to Canfina. Canfina, therefore, contends that the notice of default to the escrow agent accomplishes the transfer of the stock to Canfina.

Alford responds that the escrow agent did retain discretion under several provisions of the escrow agreement and could have interpleaded the stock with a court to permit the resolution of any dispute.

For purposes of this analysis, the court recognizes that, under *Missionary Baptist,* the escrow agreement is treated as a contract between the parties, with the escrow agent having a duty to carry out the terms of the agreement. The parties do not contest that possession of the stock by the escrow agent perfected the security interest. *See In re Copeland,* 531 F.2d 1195, 1204–05 (3rd Cir.1976). In a real estate construction transaction, under Texas law, fulfillment of escrow conditions can make a note and deed of trust effective even if not delivered from the escrow agent. *Boles v. Stonehocker,* 275 S.W.2d 141 (Tex. Civ.—El Paso, 1954 *writ ref'd n.r.e.*). But, in this case, Canfina exchanged a security interest in real estate for a security interest in stock. This case, unlike *Boles,* involves disposing of collateral. Even though the parties entered a contractual arrangement for the holding of the stock by an escrow agent and delivery upon default, Canfina must nevertheless dispose of the collateral in accordance with Texas Law.

Texas law does not require an election of remedies by Canfina. *Cohen v. Rains,* 769 S.W.2d 380, 384–85 (Tex.App.—Ft. Worth, 1989 *writ denied*). Canfina could have, after default, sold, leased, licensed or otherwise disposed of the stock in a commercially reasonable process. Tex. Bus. & Com.Code § 9.610(a) (2001). After default, Canfina did not sell, lease or license the stock. The power of attorney neither empowered nor authorized a sale or foreclosure. Canfina argues that the parties' contractual arrangement constitutes an alternative disposition of collateral in a commercially reasonable process. However, under the contractual arrangement, Canfina would take the stock in satisfaction of the debt. Section 9.620, of the Texas Business and Commerce Code, governs acceptance of collateral in full or partial satisfaction of obligation. The specific provisions of the Code for accepting collateral in satisfaction of a debt governs over the general provision of "otherwise dispose" of the collateral. The general provision authorizing disposition of collateral in a commercially reasonable process does not displace the specific provision of accepting collateral in satisfaction of the debt. *Copeland,* 531 F.2d at 1207 (applying prior provisions of the Uniform Commercial Code).

■ Like the Bankruptcy Code, the Texas Uniform Commercial Code must be read as a whole. *Jones v. Fowler,* 969 S.W.2d 429, 432 (Tex.1998); *Ex Parte Pruitt,* 551 S.W.2d 706, 709 (Tex.1977). Similarly, two sections of the Code appearing textually in the same chapter must be read together as part of a coherent scheme. *See Atchison v. Collins,* 288 F.3d 177, 179 (5th Cir.2002). Moreover, when the Legislature provides specifically for a situation, that provision governs over a general provision. *Russell v. Ingersoll–Rand Co.,* 841 S.W.2d 343, 357 (Tex.1992) (Noting "a specific statutory provision is ordinarily controlling over a more general provision.").

These principals of statutory construction mean that Canfina did not effectuate the transfer of the stock under § 9.610, regardless of the reasonableness of the parties' agreement. Instead, Canfina must have obtained possession of the stock in satisfaction of the debt under § 9.620.

Under § 9.620, Canfina may accept collateral in satisfaction of the debt it secures "only if" the debtor consents to the acceptance under the statutory process. § 9.620(a). To consent, the debtor must either agree to the terms of the acceptance

in a record authenticated "after default" or the secured creditor must send to the debtor "after default" a proposal describing its intention to accept the collateral in satisfaction of the obligation it secures. For the acceptance to become effective, the secured creditor must not receive a notification of objection authenticated by the debtor within twenty days after the proposal is sent. § 9.620(c). These provisions apply after July 1, 2001, and consequently govern the disposition of the stock. These provisions alter the prior law in Texas discussed in *Cohen,* harmonizing Texas law with the strict foreclosure approach of other states after default. The Texas Legislature has not provided for the waiver of the § 9.620(c) notification requirement. *See* Tex. Bus. & Com.Code §§ 9.602 and 9.624.

The record does not contain evidence that Alford agreed to the terms of the stock transfer "after default." Nor does the record contain evidence that Canfina sent a proposal to Alford "after default" thereby triggering the twenty day objection time. Consequently, on the record on this motion to dismiss, it does not appear that Canfina has complied with applicable Texas law. This analysis fortifies the court's application of the presumption that Cadiz had authority to file the bankruptcy petition.

Based on the foregoing,

**IT IS ORDERED** that the motion to dismiss is **DENIED.**