**In re PLAYER WIRE WHEELS, LTD., Debtor.**

No. 09–40906.

United States Bankruptcy Court, N.D. Ohio.

April 9, 2009.

Andrew W. Suhar, Suhar & Macejko, LLC, James G. Floyd, Newman, Olson & Kerr, Melissa M. Macejko, Youngstown, OH, for Debtor.

Lenore Kleinman, Office of the U.S. Trustee, Cleveland, OH, for U.S. Trustee.

## MEMORANDUM OPINION
## REGARDING MOTION
## TO DISMISS

KAY WOODS, Bankruptcy Judge.

This cause is before the Court on Motion to Dismiss (Doc. # 26) filed by Beverly A. Starr ("Movant") on March 27, 2009. Debtor and Debtor–in–Possession Player Wire Wheels, Ltd., dba B & R Wholesale Tire dba INC WHEELS ("Debtor") filed a voluntary petition pursuant to chapter 11 of Title 11 ("Bankruptcy Code") on March 21, 2009 ("Petition Date"). The petition was signed by "Roy L. Crick, Member by Executor Power/Authorized Representative," on March 21, 2009. (Pet.(Doc.# 1) and Declaration re: Electronic Filing of Documents and Statement of Social Security Number ("Declaration") (Doc. # 14).) The Motion to Dismiss is based on the contention that Mr. Crick "had no authority or power to file the Petition on behalf of Debtor, as he was not the member of the company; rather, at the time of the filing of the Petition, Movant was the person with all membership rights and the only person with authority to file a bankruptcy petition for Debtor." (Mot. to Dismiss at 1.)

On March 30, 2009, the executors of the Estate of Ray Starr, Roy L. Crick and David Starr (collectively, "Executors"), filed Response to Motion to Dismiss for Improvident Filing ("Response") (Doc. # 33), which argued that "Roy Crick is authorized to sign the bankruptcy petition. The co-executor, David Starr approved the filing and executed a proxy authorizing such action by Mr. Crick." (Resp. at 7.)

The Court held an expedited hearing on the Motion to Dismiss on March 31, 2009 ("Hearing"). At the conclusion of the Hearing, the Court took the matter under advisement and requested additional briefs from the parties by April 3, 2009. On April 3, 2009, both Movant and the Executors filed supplemental memoranda. Movant filed Movant's Supplemental Memorandum in Support of Motion to Dismiss ("Movant's Memo") (Doc. # 38) and the Executors filed Supplemental Response to Motion to Dismiss for Improvident Filing ("Executors' Memo") (Doc. # 39).

This Court has jurisdiction pursuant to 28 U.S.C. § 1334 and the general order of reference (General Order No. 84) entered in this district pursuant to 28 U.S.C. § 157(a). Venue in this Court is proper pursuant to 28 U.S.C. §§ 1391(b), 1408, and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The following constitutes the Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

## I. FACTUAL BACKGROUND

Debtor is an Ohio limited liability company that was formed in 2000. At the time of formation, Ray A. Starr, Sr. ("Ray Starr"), was the sole member of Debtor. The marriage of Ray Starr and Movant was dissolved in 2005. In connection with the dissolution of marriage, the parties entered into a Separation Agreement, pursuant to which Ray Starr agreed to pay Movant $11 million to equalize the division of marital property. Part of the property settlement involved a $5.5 million promissory note to be paid over five years at five percent simple interest in equal monthly installments of $105,000 payable on the first day of the month beginning October 1, 2005. (Mot. to Dismiss, Exs. C and D.) Documents related to this promise to pay included: (i) Non–Negotiable Secured Promissory Note in the amount of $5,500,000.00, dated August 4, 2005 and effective September 1, 2005 ("Note") (Mot. to Dismiss, Ex. D); (ii) Pledge Agreement dated August 4, 2005, whereby Ray Starr

pledged as security for the Note "all of the ownership units and interest which Pledgor owns of Player Wire Wheels, Ltd., an Ohio limited liability company, whether now owned or hereafter acquired[;]" (Mot. to Dismiss, Ex. E); and (iii) Acknowledgement [sic] of Pledge, Consent and Agreement ("Acknowledgment") dated August 4, 2005 (Mot. to Dismiss, Ex. F). David A. Detec, Esquire ("Detec"), who drafted the documents relating to the obligation of Ray Starr to pay Movant the Note and the security therefor, also served as Escrow Agent, as set forth in the various documents.

Ray Starr died on September 6, 2008. At the time of his death, he had made payments on the Note for three years, but the Note was not paid in full. Subsequent to Ray Starr's death, the Executors made payments to Movant on the Note in October, November and December 2008, as well as January and February 2009. It is undisputed that the Note was not paid in full within 180 days after the date of Ray Starr's death.

Subsequent to Ray Starr's death, Movant sent the Escrow Agent three notices of default, which are attached collectively as Exhibit G to the Motion to Dismiss. The first notice of default is dated October 15, 2008 ("First Notice"), and alleges that: (i) Ray Starr is deceased and has made performance under the Pledge Agreement "impracticable;" (ii) Ray Starr's management of Debtor had reduced profitability and impaired Movant's collateral; (iii) Ray Starr failed to deter theft and/or misappropriation of the collateral that served as security for the Note; (iv) representatives of National City Bank ("NCB")[1] "hinted" that they might take action to preserve their collateral; (v) unidentified employees of Debtor "admitted to deliberate attempts at liquidation of company assets, selling inventory at 50% of market value;" and (vi) the death of Ray Starr "has caused a transfer of the ownership of the shares of stock in [Debtor] by operation of law resulting in Default under paragraph 6(I) of the [Note]." The second notice of default is dated November 5, 2008, and adds to the alleged events of default stated in the First Notice, "an adverse interest created in the employees of [Debtor] and others by virtue of the Amended and Restated Trust Agreement and Last Will and Testament of Ray A. Starr dated May 2, 2008." The third notice of default indicates that it was hand delivered to the Escrow Agent on March 26, 2009 ("Third Notice") (subsequent to the Petition Date). The Third Notice noted the following events of default (i) Movant had not been paid pursuant to paragraph 6(h) of the Note, which required payment in full within 180 after the death of Ray Starr (i.e., March 5, 2009); (ii) paragraph 5 of the Pledge Agreement provided that a default would occur upon the death of Ray Starr; (iii) paragraph 1 of the Acknowledgment "requires that upon the death of Ray A. Starr, Sr. his estate has 180 days from the date of death to pay the balance of the Note in full including all accrued interest[,]" but the Note had not been so paid; and (iv) Article 3, Section K, of the Separation Agreement was breached because the Note was not paid as promised when "the 6th installment following the death of [Ray Starr]" was not paid when required.

On March 26, 2009, Debtor filed Minutes from Special Meeting of the Members of

---

1. NCB holds the first and best lien on all cash collateral of Debtor. The Judgement Entry of Divorce entered August 4, 2005, by the Court of Common Pleas of Domestic Relations, Mahoning County, Ohio (Case No. 05 DR 417) provided for Movant to "sign any subordination agreement required by the banks(s) on the stock pledge so that [Ray Starr] may continue to operate the corporation." (Mot. to Dismiss, Ex. C at 7.)

Player Wire Wheels, Ltd. February 20, 2009 ("Minutes") (Doc. # 20). This document consists of five pages, including two sets of the two-page Minutes—one set signed by Roy Crick and David Starr as "Co/Exec," dated March 21, 2009, and the other set signed by Mr. Crick on behalf of himself and as proxy for David Starr, co-executor of the estate of Ray Starr (Case no. 2008 ES 527, Mahoning County Common Pleas Court—Probate Division). Attached to the Minutes was Proxy, which is dated "February ___, 2009" and signed by David Starr. The Proxy appointed Mr. Crick as proxy to vote all membership units of Debtor at the "special meeting of the members to be held at the office of the company in Youngstown, Ohio at ___ a.m. on February 20, 2009." Subsequent to the Special Meeting, Debtor filed its voluntary petition on March 21, 2009.

## II. STANDARD FOR REVIEW

■ Section 1112(b) of the Bankruptcy Code provides that "on request of a party in interest, and after notice and a hearing, ... the court shall ... dismiss a case under this chapter ... if the movant establishes cause." 11 U.S.C. 1112(b)(1) (West 2008). A non-exhaustive list of what constitutes "cause" is set forth in § 1112(b)(4). Although authority to file a bankruptcy petition is not specifically set forth in subsection (4), it is axiomatic that the party who signs a bankruptcy petition must be authorized to do so. Mr. Crick signed the Declaration, which states: "I declare under penalty of perjury that ... I have been authorized to file the petition on behalf of the debtor." Thus, if this statement in the Declaration is not true, Debtor's case must be dismissed.

■ The Movant bears the burden of proof with respect to the Motion to Dismiss. Allocating the burden of proof in a motion to dismiss pursuant to 11 U.S.C.

§ 1112(b), a bankruptcy court in this district held, "The movants bear the burden of proof on their motion to dismiss by the preponderance of the evidence.... [T]he Court is unconvinced that a creditor can shift the burden of proof in an action under § 1112(b) merely by alleging that a debtor lacks good faith." *In re New Batt Rental Corp.*, 205 B.R. 104, 106–07 (Bankr. N.D.Ohio 1997). See also *In re Continental Holdings, Inc.*, 170 B.R. 919, 927 (Bankr.N.D.Ohio 1994) ("The [movant] bears the burden of proof on its motion [to dismiss] by the preponderance of the evidence."); *In re Citi–Toledo Partners*, 170 B.R. 602, 606 (Bankr.N.D.Ohio 1994) ("The Moving Creditors bear the burden of proof on their motion by the preponderance of the evidence."). *Accord, Bal Harbour Club, Inc. v. AVA Development, Inc. (In re Bal Harbour Club, Inc.)*, 316 F.3d 1192, 1195 (11th Cir.2003) ("[I]n the litigation of a motion brought under section 1112(b) to dismiss a Chapter 11 petition—which is what the bankruptcy court had before it— the movant, AVA, had the burden of proof.")

■ Thus, in order to prevail, Movant must establish cause to dismiss Debtor's case by the preponderance of the evidence.

## III. ARGUMENTS AND ANALYSIS

Movant argues that Roy Crick was not authorized to file Debtor's bankruptcy petition for the following reasons:

1. Mr. Crick was one of two co-executors of the estate of Ray Starr and he did not have the consent of David Starr in filing the petition;

2. Neither of the Executors had authority to file the bankruptcy petition because Movant exercised all membership rights in Debtor as of the Petition Date; and

3. Even if Movant did not exercise all membership rights in Debtor as of the Petition Date, she was deemed a member in some amount and her consent was required to file the bankruptcy petition.

After analyzing each of these arguments, the Court finds that Movant has failed to carry her burden of proof to establish cause for dismissal of Debtor's case.

### A. Both Executors Authorized the Filing of the Petition

■ Movant argues that Mr. Crick was one of two Executors and, thus, needed the consent of David Starr to file the Petition. The docket reflects the Minutes, which show that (i) David Starr signed one set of the Minutes; and (ii) David Starr appointed Mr. Crick as his proxy in voting his membership interests. Despite the two prior notices of default that Movant had sent to the Escrow Agent, as of February 20, 2009, Messrs. Crick and Starr, as the Executors of the probate estate of Ray Starr, exercised all rights of membership of Debtor. As of February 20, 2009, (i) Movant had a security interest in the pledged shares held by the Escrow Agent, and (ii) the probate estate of Ray Starr owed Movant the balance of the Note. Movant has not pointed this Court to any document (nor has the Court found any provision in any document) that grants Movant any membership rights (ownership or control) as of February 20, 2009. As a consequence, when the Special Meeting of the members of Debtor was held on February 20, 2009:(i) the Executors held 100% of the membership interest in Debtor; and (ii) Mr. Crick had the proxy of David Starr and could lawfully vote all membership shares in favor of the resolution to engage bankruptcy counsel and to file a chapter 11 bankruptcy petition. Mr. Crick, therefore, had the consent of David Starr to vote to file a bankruptcy petition.

Movant argues that Mr. Crick's action in filing the bankruptcy petition not only violated the Pledge Agreement and the Acknowledgment, but Ohio law as well, citing Ohio Revised Code § 1705.25. Movant interprets this section as requiring the consent of all members of a limited liability company to authorize the act of one member to operate the business outside the ordinary course of business. Even assuming this interpretation is true, the Minutes demonstrate that both Executors—and thus 100% of all membership interests—consented to filing the bankruptcy petition. As a consequence, to the extent Movant's argument is based on the fact that Mr. Crick, alone, rather than Messrs. Crick and David Starr signed the Petition, this Court finds that Mr. Crick had the proxy and consent of David Starr to file the petition. As a consequence, Movant's first argument is without merit.

### B. Movant Did Not Exercise All Membership Rights

■ Movant argues that only she was authorized to file a bankruptcy petition after March 5, 2009. Movant contends that the Executors "lost all membership rights one-hundred eighty (180) days after the death of Mr. Starr because the Note was not paid in full." (Mot. to Dismiss at 6.) This argument, however, is not supported by the documents.

Movant cites to the Acknowledgment, section 1, which states:

It is the intent and agreement of the Pledgor [Ray Starr], the Creditor [Movant], and the Company [Debtor], that upon the death of Ray A. Starr, Sr., his estate shall be deemed to be the Member and shall be granted one-hundred eighty (180) days in which to pay in full all the remaining balance and accrued interest due under the Note. In the

event that the Note is not paid in full within one-hundred eighty (180) days of the death of Ray A. Starr, Sr., then in that event, either the Creditor and/or Escrow Agent *shall be deemed to be the Member to the extent necessary or advisable* to continue operation of the Company until the Creditor determines whether to sell the Company as permitted [sic] the Pledge Agreement and/or whether to take all of the Pledgor's interest in the Company in satisfaction of all remaining amounts due and owing to the Creditor under the Note, also as set forth in the Pledge Agreement. Again, it is the intent of the Creditor, the Pledgor, and the Company, that the Operating Agreement of the Company be deemed amended to the extent necessary or advisable to carry-out [sic] the intent, agreements and terms of the Pledge Agreement, and no terms or sections of the Operating Agreement shall be construed in such a manner as to hinder, delay, or prevent the enforcement of the Pledge Agreement.

(Mot. to Dismiss, Ex. F (emphasis added).)

The Operating Agreement specifies that " 'Member' means the Person who signed this Agreement as a member, or who is hereafter 10 admitted as a Member of the Company pursuant to this Agreement, for so long as the Person continues as a Member in accordance with this Agreement." (Operating Agree. Appendix; Mot to Dismiss, Ex. B.) Because neither the probate estate of Ray Starr (*i.e.*, the Executors) nor Movant was "admitted as a Member" of Debtor pursuant to the terms of the Operating Agreement, it was necessary for the Acknowledgment to provide that each would be "deemed" to be the Member of Debtor. The Acknowledgment doe not provide, however, that after passage of 180 days, Movant would be deemed to be the "sole" Member of Debtor with the right to exercise 100% of the Member rights. In-

deed, the section of the Acknowledgment to which Movant cites limits her Membership rights "to the extent necessary or advisable" rather than providing for unlimited and unfettered rights of Membership. The 180 day period is explicitly for the purpose of the probate estate paying the remaining balance of the Note. Nothing in the Acknowledgment states that the Executors cease to be a Member after passage of 180 days if the Note has not been paid in full.

Section 10.2 of the Operating Agreement states: *"Number and Gender.* All provisions and references to gender and number are deemed to refer to masculine, feminine or neuter, singular or plural, as the identity of the Person or Persons may require." (Mot. to Dismiss, Ex. B.) This Court reads section 1 of the Acknowledgment to mean that, if the Note is not paid in full within 180 days after the death of Ray Starr, then Debtor would be comprised of two Members—the Executors and the Movant/Escrow Agent. This reading is consistent with that of the Escrow Agent (who drafted the Acknowledgment and the Pledge Agreement), who states in an Affidavit:

> In the event that there is a determination or mutual agreement of default pursuant to the terms and conditions of the Pledge Agreement, the Acknowledgement [sic] of Pledge, Consent and Agreement prepared by me and entered into between Ray A. Starr, Sr., Beverly Starr, and Player Wire Wheels, Ltd. provides, in my opinion, that there would then be that two members in the company, the Estate of Ray A. Starr, Sr., and Beverly A. Starr.

(Detec Aff., dated April 3, 2009, ¶ 8, attached to Executors' Memo.)

Movant bears the burden of proof that she, alone, had the authority to exercise all

rights of membership in Debtor after March 5, 2009, which would include authority to file a bankruptcy petition. Movant's reliance on section 1 of the Acknowledgment does not support this argument. Accordingly, the Court finds that Movant has not carried her burden of proof with respect to her second argument.

### C. Movant Did Not Have to Consent to Filing the Petition

■ The last argument made by Movant is the most difficult, but Movant has not carried her burden of proof on this argument either.

Movant first argues that the "upon any default in any obligation of Mr. Starr or Debtor to Movant (not just payment default), Mr. Starr lost the voting right to the pledged units." (Movant's Memo at 3.) She then argues that, as of February 20, 2009, when the Executors held the Special Meeting, they were obligated to notify her of such meeting because she had previously given notice to the Escrow Agent of certain defaults. Movant ignores, however, that a default is not deemed to occur merely because she gives notice of default. Subsequent to receiving notice of default from Movant, the Escrow Agent is required to give Mr. Starr (or the Executors) detailed notice of the default. Then Mr. Starr (or the Executors) have ten days in which to eliminate, cure or contest the default. If none of those things are done, then the Escrow Agent has fifteen days to deliver the pledged units to Movant. In the event that Mr. Starr (or the Executors) contest a default, the parties are required to arbitrate the dispute pursuant to paragraph 18 of the Pledge Agreement. (Pledge Agreement, § 5; Mot. to Dismiss, Ex. E.) Until "[a] default under this Pledge Agreement shall occur[,]" [2] Movant held a security interest in the pledged units, but she did not exercise any rights of membership in Debtor. (Mot. to Dismiss, Ex. E at 7.) It is not clear that, as of February 20, 2009, a default had actually occurred, which would trigger the obligation of the Escrow Agent to transfer any of the pledged Membership units. It is undisputed that the Escrow Agent continues to hold 60% of the pledged units and has not transferred any of such pledged units to Movant. Thus, Movant has not established that, as of February 20, 2009, when the Executors held the Special Meeting, she had any right to be notified and/or participate in management or control of Debtor.

Movant also contends that, as of March 21, 2009, which is the date that the Minutes were signed [3] and the Petition Date, "the self-executing one-hundred eighty (180) day provision had been in effect." (Movant's Memo at 4.)

[I]f the promissory note was not paid in full within 180 days of the date of death of Ray A. Starr, Sr., then either Beverly A. Starr or me as Escrow Agent immediately and automatically would be deemed to be a member of the Player Wire Wheel, Ltd. to continue the operation of that Company and not be dissolved until Beverly A. Starr could exercise her rights and remedies under the Promissory Note and Pledge Agreement.

(Detec Aff., dated April 3, 2009, ¶ 7, attached to Movant's Memo.)

**2.** According to the Escrow Agent, a default under the Pledge Agreement is not automatic, there must be a "determination or mutual agreement of default." (*See* Detec Aff. ¶ 8, attached to Executors' Memo.)

**3.** The fact that the Minutes were signed on March 21, 2009, is not significant. The Minutes memorialize the Special Meeting on February 20, 2009. The Executors did not exercise any control over Debtor by merely signing the Minutes.

Movant claims that, even if the Court does not find she exercised 100% control of Debtor as of the Petition Date, she had control of 60% of Debtor, as represented by the units under the control of the Escrow Agent.

> Movant argued she had 100%, given the language used in the various applicable documents and construing them together, or alternatively, 60%. The co-executors argued she had either 40% or 32%. Attached hereto is the Affidavit of the escrow agent and drafter of the applicable documents, Attorney David A. Detec, who asserts that 60% of the voting rights are still held in escrow.

(Movant's Memo at 2.) Movant goes on to state that, as of the Petition Date, the Executors "admit in Court that Movant then had the voting rights in 32% to 40% of the membership units." *Id.*

The Executors argue that none of the documents at issue separate control from ownership of Debtor. "The Operating Agreement does not separate ownership from control. Rather it vests control of [Debtor] and all of its affairs in the member." (Executors' Memo at 3.) The Executors contend that:

> All rights, voting control, control and membership remain with the Pledgor and no such interests can pass to Mrs. Starr under any reading of the Pledge Agreement or the Acknowledgement [sic]. Until a determination of default and transfer of the Pledged Units occur pursuant to the Pledge Agreement procedures, the co-executors retain *sole* authority to exercise control of [Debtor].

(*Id.* at 5–6 (emphasis in original).)

Movant herself gave notice of the payment default to the Escrow Agent on March 26, 2009 (subsequent to the Petition Date). This default notice is difficult to reconcile with her current position that she "automatically" had absolute control of Debtor as of March 5, 2009. This Court will assume (without deciding) that, when 180 days after the death of Ray Starr had passed without the Note being paid in full, Movant and/or the Escrow Agent "immediately and automatically" were deemed to be a Member of Debtor. That fact alone, however, does not necessarily negate the authority that the Executors properly exercised on February 20, 2009.

When Roy Crick signed the Petition on March 21, 2009, he was exercising the authority given to him by the Executors on February 20, 2009, when they had 100% of the Member rights in Debtor. Even if Movant could have exerted control to revoke the previously granted authority to file the Petition, she did not do so prior to the Petition Date. There is no indication that, prior to the Petition Date, Movant informed the Executors that she considered herself to be the sole Member or a Member in any proportion of Debtor. Because the Executors' authority to manage Debtor, including filing the Petition, was not revoked, facially it appears that such authority continued to stand.

In a case with similar facts, a Texas bankruptcy court concluded that, because corporate stock had not been released from escrow, the original owner remained the presumptive owner of the stock and was authorized to file a bankruptcy petition. The court held, however, that the dispute over authority to file could not be resolved in a motion to dismiss pursuant to § 1112(b).

> The parties agree that prior to the filing of the petition, the escrow agent had not delivered the stock to Canfina. Presumptively, therefore, Alford remained the owner of the Cadiz stock, making the filing facially authorized.
>
> However, the parties do have a material dispute over the ownership of the stock at the time of the filing of the petition. If Alford retained an owner-

ship interest in the Cadiz stock, then the Cadiz board had not been changed by Canfina, but rather had authorized the filing. If, on the other hand, Canfina had obtained the stock in satisfaction of the Alford debt, then Canfina had changed the board and the new board had not authorized the filing. This dispute over the ownership of the Cadiz stock may ultimately rebut the presumption, but the dispute cannot be resolved in a contested matter under Bankruptcy Rule 9014. The determination of the ownership of the stock must be resolved in an adversary proceeding. Bankruptcy Rules 7001(2) and (9).

*In re Cadiz Properties, Inc.*, 278 B.R. 744, 746 (Bankr.N.D.Tex.2002).

■ This Court finds that Movant has not carried her burden of proof to establish that Roy Crick, on behalf of the Executors, was not authorized to file the Petition. To the extent there is a dispute about who actually has authority to exercise control of Debtor, that issue must be resolved in an adversary proceeding, rather than through a motion to dismiss under 11 U.S.C. § 1112(b). An appropriate order will follow.

### ORDER DENYING MOTION TO DISMISS

Before the Court is Motion to Dismiss (Doc. # 26) filed by Beverly A. Starr ("Movant") on March 27, 2009. On March 30, 2009, the executors of the Estate of Ray A. Starr, Sr. (collectively, "Executors") filed Response to Motion to Dismiss for Improvident Filing (Doc. # 33).

The Court held an expedited hearing on the Motion to Dismiss on March 31, 2009 ("Hearing"). At the conclusion of the Hearing, the Court took the matter under advisement and requested additional briefs from the parties by April 3, 2009. On April 3, 2009, both Movant and the Executors filed supplemental memoranda. Mov-

ant filed Movant's Supplemental Memorandum in Support of Motion to Dismiss (Doc. # 38) and the Executors filed Supplemental Response to Motion to Dismiss for Improvident Filing (Doc. # 39).

For the reasons set forth in this Court's Memorandum Opinion entered on this date, the Court finds that Movant has not established cause, as required by 11 U.S.C. § 1112(b), for this Court to dismiss Debtor's chapter 11 case. As a consequence, the Court hereby denies the Motion to Dismiss.